**Ron & Patricia VANBOOVEN, Respondent,**

v.

**William & Jill SMULL, Appellant.**

**No. WD 51982.**

Missouri Court of Appeals, Western District.

Submitted Sept. 27, 1996.

Decided Feb. 11, 1997.

Janis L. Prewitt, Springfield, Julie Lee Prewitt, Kansas City, Ronald E. Smull, Columbia, for appellant.

Elton W. Fay, Columbia, for respondent.

Before HANNA, P.J., and SMART and LAURA DENVIR STITH, JJ.

## PER CURIAM.

This case involves an action alleging fraud in the sale of residential real estate. William and Jill Smull, defendants, appeal from the trial court's judgment entered in favor of Ron and Patricia VanBooven, plaintiffs, in the amount of $3,100.00. On appeal, the Smulls claim that the trial court erred in entering judgment in favor of the VanBoovens because (1) there was no evidence that the Smulls knew there was any material defect; (2) the VanBoovens failed to show that the undisclosed information was beyond their reasonable reach and not discoverable in the exercise of reasonable diligence; (3) the Smulls were released from all liability regarding the condition of the property because the VanBoovens expressly acknowledged that they accepted the property in its present condition; and (4) the trial court erred in not allowing the Smulls a credit of $2,300.00, the amount of the settlement between the VanBoovens and the realtor, Donna Rice.

On January 15, 1994, William and Jill Smull entered into a contract for the sale of their home with Ron and Patricia VanBooven. The VanBoovens paid $133,000.00 to purchase the property and moved into the house on March 16, 1994. Shortly after moving into the property, the VanBoovens discovered that a substantial amount of the carpet was saturated with dog urine.

The VanBoovens filed a petition for damages on November 16, 1994 naming the Smulls and Donna Rice as defendants. They alleged two counts of fraudulent misrepresentation of the condition of the carpet contained in the house, Count I against the Smulls and Count II against Ms. Rice, and one count of misrepresentation of the square footage of the house (Count III) against both the Smulls and Rice. The VanBoovens settled the claim against Donna Rice and she was dismissed from the action. The dismissal of Rice eliminated Counts II and III from the petition. On January 25, 1995, the Smulls filed an answer denying the allegations contained in the petition and asserted an affirmative defense that they had been released from all liability. Trial was held in the associate circuit court resulting in a judgment for the VanBoovens. The Smulls appealed from the associate circuit court judgment.

The trial de novo was conducted in the circuit court on September 8, 1995. Both the VanBoovens and the Smulls testified at trial, as well as Frederick Wappel, the carpet cleaner, and Darrel Wainscott, the man who replaced the carpet. Mr. VanBooven testified that he and his wife visited the house three or four times before they took possession of the house. Each time they visited the house, they conducted general inspections of the house. The VanBoovens noticed that the Smulls had two dogs. During the visits, they did not notice any unusual odors or stains on the carpet. While discussing a tear in the carpet with Mr. Smull, Mr. VanBooven asked him if there was anything else wrong with the carpet. Mr. Smull told Mr. VanBooven that he was unaware of any other problems with the carpet.

Frederick Wappel, who said he had been in the carpet cleaning business for eight to nine years, testified that when he first inspected the VanBoovens' carpet, he noticed a masking smell on the carpet like "Carpet Fresh," a commercial product designed to

cover odors in carpet. As he cleaned the carpet he noticed a strong urine smell. He decided to treat the damaged areas of the carpet with an enzyme, let it soak and then spray a neutralizer on the carpet. After inspecting the carpet the next day, he concluded that he had done all he could do, and that the carpet would have to be replaced.

Darrel Wainscott testified that he was hired to replace the carpet. While working with the carpet, Wainscott noticed a strong animal odor in certain areas. He found areas in the house where the urine had soaked through the padding underneath the carpet. In the damaged areas, the sub-floor underneath the padding was still damp from the urine. Wainscott had to treat the sub-floor several times to remove the urine and the odor.

Mr. Smull testified that shortly after moving into the home, they acquired two puppies. Smull recounted cleaning urine stains on the carpet approximately eight to nine times per year. He and his wife both worked outside the home during the day. For the first year, they shut the dogs in the basement while they were at work. Later, they allowed the dogs to remain free in the house during the day. Mr. Smull also left the dogs free in the house while they went on vacations. After being away from the home for extended periods of time, the Smulls would check the carpets because they "half-expected to find something." The Smulls regularly used "Carpet Fresh" to mask odors, each time they vacuumed the carpet. Smull denied that he had any way of knowing that urine was embedded in the carpet, and that he never had an opportunity to see the sub-floor. Jill Smull admitted that she knew there were several urine stains on the carpet from the animals, and that the average person would probably not notice the stains.

The trial court entered judgment in favor of the VanBoovens and against the Smulls in the amount of $3,100.00. The Smulls now appeal.

### Sufficiency of the Evidence

In Points I and II, which will be addressed together, the Smulls argue that the trial court erred in entering judgment in favor of the VanBoovens because there was no evidence in the record that the Smulls knew that there was any material defect in the carpet and the VanBoovens failed to show that the undisclosed information was "beyond their reasonable reach and not discoverable in the exercise of reasonable diligence."

In a court-tried case, the judgment of the trial court will be affirmed unless there is no substantial evidence to support the judgment, it is against the clear weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.1976). The trial court sits in the best position to judge the credibility of the witnesses. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 655 (Mo. banc 1989).

In the petition for fraud, the VanBoovens alleged, *inter alia,* that at the time defendants offered their property for sale, they concealed the fact that "much of the carpet was saturated with urine, was stained by urine, and that large amounts of carpet deodorizer were being used to conceal the urine odor;" the condition of the carpet was a material fact which plaintiffs considered when determining whether to make the purchase; the concealment led to a false belief on the part of plaintiffs that the carpet would be in a condition suitable for habitability; defendants failed to disclose the condition of the carpet with the intent and for the purpose of defrauding the plaintiffs; plaintiffs relied on the fraudulent representations in purchasing the house; defendants had a duty to disclose the concealment due to their position of superior knowledge and the inability of plaintiffs to discover the defect through reasonable investigation; as a direct and proximate result of defendants' conduct, plaintiffs were damaged in the sum of $4,530.00.

The burden of proving fraud is on the party who is charging fraud. *Barylski v. Andrews,* 439 S.W.2d 536, 539 (Mo.App.1969). Fraud must be established by evidence, and is never presumed. *Id.* The elements of fraud include: a representation that is false and material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent that the representation be acted

upon; the hearer's ignorance of its falsity; the hearer's reliance on its truth; the hearer's right to rely on it; and injury. *State ex rel. PaineWebber, Inc. v. Voorhees,* 891 S.W.2d 126, 128 (Mo. banc 1995).

First, we must determine whether there was a representation that was false and material regarding the condition of the carpet. The Smulls denied any knowledge of any material defect in the carpet and claim that the VanBoovens' evidence that the Smulls knew of any permanent odor in the carpet was, at best, "unsupported conjecture and speculation."

[A] representation is not confined to words or positive assertions; it may consist as well of deeds, acts, or artifices of a nature calculated to mislead another and thereby to allow the fraud-feasor to obtain an undue advantage over him.... If he fails to disclose an intrinsic circumstance that is vital to the contract, knowing that the other party is acting upon the presumption that no such fact exists, it would seem to be quite as much a fraud as if he had expressly denied it, or asserted the reverse, or used any artifice to conceal it, or to call off the buyer's attention from it.

*Barylski,* 439 S.W.2d at 539 (*quoting Lindberg Cadillac Co. v. Aron,* 371 S.W.2d 651, 653 (Mo.App.1963)). The VanBoovens based their cause of action on the concealment by the Smulls of the damaged condition of the carpet. Silence or concealment of facts can amount to actionable fraud if it relates to a material matter known to the party sought to be held accountable for fraud. *Vendt v. Duenke,* 210 S.W.2d 692, 699 (Mo.App.1948). There must also be a legal duty to disclose on the part of the fraud-feasor arising from a relation of trust, from confidence, inequality of condition, or superior knowledge which is not within the fair and reasonable reach of the other party. *Id.*

The alleged nondisclosure here related to an allegedly latent defect. The VanBoovens did not notice the urine smell when they visited the Smulls' residence. Mr. Smull represented to Mr. VanBooven that nothing was wrong with the carpet as far as he knew. The judge, as fact finder, could have believed from the evidence that Mr. Smull had abundant notice that, in fact, the carpet was likely to be rotting underneath from extensive urine saturation. The court also could have found that the defective condition of the carpet was not readily observable. Mrs. Smull acknowledged at trial that areas which had absorbed urine were probably not noticeable to the average person walking through the house. The Smulls also admitted that they used "Carpet Fresh" every time they vacuumed their home.

It can be concluded from the evidence that the condition of the carpet related to a material matter, and that the facts of this matter were known to the Smulls. The Smulls had superior knowledge, which was not within the fair and reasonable reach of the plaintiffs. *See Barylski,* 439 S.W.2d at 540. It can also be inferred from the evidence that the Smulls intended for the Van-Boovens to purchase the property ignorant of the carpet's condition. The fact-finder could find that the use of the Carpet Fresh constituted active concealment, and that the Van-Boovens reasonably relied on the concealment of the condition of the carpet and on Mr. Smull's statement that he was unaware of any problems with the carpet. The right for a person to rely on a representation is generally a question of fact. *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 690 (Mo.App.1994). "The concept of fraud liability based upon nondisclosure couches such reliance in terms of the availability of the information to the plaintiff and the plaintiff's diligence." *Fairmont Foods Co. v. Skelly Oil Co.,* 616 S.W.2d 548, 550 (Mo.App.1981). The party asserting fraud must show that the nondisclosed information was beyond their reasonable reach and not discoverable in the exercise of reasonable diligence. *Id.*

The Smulls suggest that the Van-Boovens knew there were dogs in the house and should have known that dogs would urinate on the carpet; that they inspected the house and had it inspected; and thus, they had the means to learn of the problems of which they complained. In our view, the fact that the VanBoovens knew that there were dogs in the house does not charge them with knowledge of carpet damage. The Smulls

provide us with no legal authority for the proposition that knowledge of the presence of dogs is tantamount to notice of carpet damage. In any event, the VanBoovens *did* inquire about the condition of the carpet. A person is entitled to rely on a representation (1) when he lacks equal facilities for learning the truth; (2) where the facts are peculiarly within the knowledge of the speaker and difficult for the hearer to ascertain; (3) where the representation relates to latent defects; (4) where it would be necessary to employ a third person to make an examination in order to discover the truth because of the hearer's ignorance and inexperience; and (5) where the employment of an expert would be required. *Shechter v. Brewer,* 344 S.W.2d 784, 788 (Mo.App.1961). In this case, because the odor was masked, and the urine stains were not readily visible, the fact finder could reasonably conclude that the VanBoovens were entitled to rely upon the representations made by the Smulls that they did not know of any defect in the carpet.

The Smulls rely on *Mobley v. Copeland,* 828 S.W.2d 717 (Mo.App.1992) for the proposition that the VanBoovens were put on notice of the condition of the carpet because they had seen dogs in the house. *Mobley* is distinguishable. *Mobley,* involved a swimming pool on property purchased by the plaintiffs. After closing and taking possession of the property, the plaintiffs discovered that there were electrical charges running through the swimming pool. The plaintiffs claimed that sellers had failed to disclose the current in the pool. The evidence presented at trial showed that the sellers did not know the tingling sensation in the pool was from an electrical charge, but instead believed, after seeking advice from a pool company, that the tingling was due to a chemical imbalance in the water due to improperly mixed chemicals. The sellers changed the chemicals they were using in the pool, which seemed to help the situation. There was no evidence that the sellers knew there was an electrical problem. Thus, the court found that the buyers failed to establish a submissible case of fraudulent nondisclosure with respect to the electrical charge in the pool. *Id.* at 725–26. Here, in contrast, the Smulls *knew* the dogs had urinated on the carpet *many* times dur-

ing the five years that they owned the house. The Smulls knew also that the dogs had been denied access to the yard for long periods of time. The common experience of pet owners is that the animals eventually have to relieve themselves. The VanBoovens could not reasonably be charged with knowledge that the dogs had on some occasions been denied access to the yard for days at a time. This would not normally be inferred, and the VanBoovens could not have such knowledge unless they were informed. These facts, together with the regular use of the carpet deodorizer, constituted evidence of knowledge of carpet damage. The evidence presented supported a finding of fraud. The trial court did not err in entering judgment in favor of the VanBoovens. Points I and II are denied.

### Release

■ In Point III, the Smulls argue that the trial court erred in entering judgment in favor of the VanBoovens because the VanBoovens expressly and in writing acknowledged that they accepted the property in its present condition and released the sellers from all responsibility regarding the condition of the property. Thus, the Smulls contend that they are precluded from incurring any liability for the condition of the premises.

■ Before closing on the property, the buyers signed a document entitled, "Statement of Final Inspection & Release by Buyers," which provided:

> The undersigned Buyers do hereby certify that they have inspected the property located at 5600 Waterfront Dr. N. Columbia Mo. 65202 and find that all the heating, air-conditioning, electrical and plumbing systems and equipment, and all included appliances are in working condition. *The Buyers further acknowledge that they accept the property in its present condition and release the Sellers and the Sellers' Agents from all further responsibility regarding the condition of the property.*

(Emphasis added). Generally language that is plain and unambiguous in a release will be given effect within the context of the agreement, unless the release is based on fraud,

misrepresentation or unfair dealings, in which event the court may look at the parties' intent to ascertain the scope of the release. *Slankard v. Thomas,* 912 S.W.2d 619, 624 (Mo.App.1995). We have already determined that there was evidence of fraud present in this case. There was evidence from which it could be found that when the VanBoovens signed this document they were unaware that the carpet's damaged condition had been concealed and misrepresented.

The Smulls rely on *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713 (Mo.App. 1995). In *Ringstreet,* an apartment complex purchaser brought suit against sellers for failure to disclose that pipes in the complex routinely froze in the winter. The buyers and sellers contractually agreed that sellers were not making any warranties, representations or statements concerning the physical condition of the property. The sellers did inform the purchasers that the pipes had frozen on one previous occasion. Thus, this court found that sellers had no duty to disclose the fact that the pipes froze frequently, and that summary judgment was appropriate. *Ringstreet,* 890 S.W.2d at 720. This case is distinguishable from *Ringstreet.* In the instant case, the parties did not contractually agree that the sellers made no representations or statements concerning the physical condition of the property; further, nothing said by the Smulls alerted the VanBoovens to the possibility of substantial damage to the carpet. Thus, the release in this case did not prevent the VanBoovens from prevailing in an action for fraud. The trial court did not err in entering judgment for the VanBoovens. Point III is denied.

### Credit

 In Point IV, the Smulls claim that the trial court erred in not allowing them a credit of $2,300.00 on the judgment because Donna Rice was an alleged joint tortfeasor as to the condition of the carpet and Ms. Rice paid that amount to receive a dismissal without prejudice from the lawsuit. The Smulls have failed to preserve this claim for review. The record reveals that the Smulls never moved the trial court for an order allowing the credit that they now claim. The transcript reveals that although appellants questioned Mr. VanBooven about the settlement with Donna Rice during the trial, the issue was never followed up, either before or after the trial court's decision on the claim of plaintiffs against the Smulls. We may not address an issue that was not first put before the trial court. *Carlund Corp. v. Crown Center Redevelopment Corp.,* 910 S.W.2d 273, 276 (Mo.App.1995). "[A]n appellate court will not convict the trial court of error on an issue which was never before it to decide." *Khulusi v. Southwestern Bell Yellow Pages, Inc.,* 916 S.W.2d 227, 231 (Mo.App.1995). Our search of the transcript for a hearing on the motion with regard to the claim of set-off indicated that no motion was filed, and the parties did not address themselves to the issue. The record does not show whether or not the trial court took the settlement into account in setting the amount of damages. We do know, however, that the issue was never formally presented. It cannot now be raised on appeal. Point IV is denied.

Judgment is affirmed.