Jeanne MARTIN, Respondent,

v.

David McNEILL, Appellant.

No. WD 52573.

Missouri Court of Appeals, Western District.

Submitted July 10, 1997.

Decided Oct. 7, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1997.

Application for Transfer Denied Jan. 27, 1998.

Ray E. Sousley, Kansas City, for appellant.

Clark S. Gay, Kansas City, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

SMART, Judge.

David McNeill appeals a judgment entered against him for $1,500.00 on a claim for fraudulent nondisclosure in connection with Jeanne Martin's purchase of a house. Mr. McNeill contends that the trial court erred in entering judgment in favor of Ms. Martin because: (1) Ms. Martin offered no evidence that the defect existed before she owned the house and no evidence that Mr. McNeill had any knowledge of the defect; (2) Ms. Martin had undertaken her own independent investigation of the house and is thus precluded from relying on any representations or nondisclosures of Mr. McNeill; (3) the two verdict directing instructions were inconsistent; and (4) the court should have given Mr. McNeill's instruction regarding Ms. Martin's waiver of her right to rely on Mr. McNeill's disclosure statement. The judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 1992, Mr. McNeill purchased the real property located at 1240 Romany Road in Kansas City, Missouri for the purpose of "rehabbing" the property and reselling it at a profit. Mr. McNeill was in the business of buying, "rehabbing" and selling homes. Mr. McNeill made many repairs and improvements to the property. He placed a new roof on the house, installed a new master bathroom (which included a Jacuzzi tub, a shower and a separate toilet area), had the hardwood floors refinished, and installed a new kitchen. The house was painted inside and out. Some of the work was completed by Mr. McNeill and some was completed by subcontractors with Mr. McNeill's supervision and assistance.

Mr. McNeill placed the house on the market in January 1993. As a part of listing the house, Mr. McNeill filled out a disclosure statement. On that statement, Mr. McNeill indicated that additions/improvements had been made to the house. The statement also contained the following statement: "Disclose any material defects in the property not fully described above. Describe any significant repairs, alterations to the property and who did the work." In response, Mr. McNeill wrote, "None."

Ms. Martin viewed the home and eventually entered into a contract to purchase it from Mr. McNeill. The contract included the seller's disclosure statement indicating that there were no material defects in the home. Prior to closing, Ms. Martin was in the house on several occasions. Ms. Martin conducted a termite inspection, mechanical inspection and a structural inspection. Mr. McNeill was to pay for any repairs necessitated by these inspections, which he did.

After Ms. Martin moved into the house, several defects became apparent, including blistering and peeling paint, defective tile work, defective plumbing and a leaky roof. Ms. Martin testified that within six weeks of moving into the house and using the master bathroom, the tile cracked in the water closet and the tile in the shower stall fell off the walls. There was water behind the tile because the tile had not been sealed properly. The whirlpool tub was uneven. When the tub was leveled, the pipes connecting to the faucets had to be lengthened. Ms. Martin testified that the exterior paint had blistered and peeled, in some places down to the bare wood. There were also problems with the interior paint. The paint in the sunroom peeled off of the walls. In July 1993, Ms. Martin noticed that the roof over the sun porch was sagging.

Testimony at trial indicated that the blistering and peeling paint was due to improper surface preparation and failure to apply a primer. Carla Hine, a painter and paper

hanger, was hired to paint the interior of the sunroom. She found that the wood on the windows was blistering and peeling because of an improper paint. She also found that the paint was not sticking to the paneled walls. Ms. Hine, who had been in business for eighteen years, testified that the paint was popping off because the wall had been improperly prepared for painting. She stated that an oil-based sealer-primer should have been placed on the panelling first and that this had not been done. Mr. McNeill testified that he hired David Troxell to paint the sunroom, that he watched Mr. Troxell paint the sunroom and that Mr. Troxell had applied an oil-based sealer before applying a latex topcoat.

William Shinn was hired by Ms. Martin to paint the exterior of the house. Mr. Shinn was a retired paint inspection foreman with General Motors. He also worked for a painting contractor. He testified that the paint on the exterior was in bad condition, "peeling down to the bare wood." It was his opinion that the exterior of Ms. Martin's house had not been properly prepared before it was painted and that the paint that was coming off the house had not been properly sealed with a primer coat. Mr. McNeill testified that he had painted the exterior of the house and had applied an oil-based primer coat.

Ms. Martin hired James Gibson, a general contractor, to repair the roof over the sun porch. In his opinion, the sag in the roof would have been noticeable in 1992, when Mr. McNeill added a layer of shingles to the roof during the rehab work on the house. Mr. Gibson also was hired to replace the tile in the half bath on the first floor of the house. It was his opinion that the tile was not properly installed.

Ms. Martin attempted to contact Mr. McNeill about the problems with the house. Mr. McNeill did send someone to look at the tile and offered to have the tile installer make repairs, but Ms. Martin preferred to choose her own repairman. Ms. Martin did not contact Mr. McNeill further about problems with the house because she felt him to be arrogant, nonresponsive and rude, refusing to come to the house to see the problems. This suit followed.

The cause came to trial in February 1996. The court submitted the case to the jury on two theories, fraudulent nondisclosure and fraudulent misrepresentation. The jury returned a verdict in favor of Ms. Martin and against Mr. McNeill for fraudulent nondisclosure in the amount of $1,500.00. Mr. McNeill appeals.

## SUFFICIENCY OF THE EVIDENCE

In his first point, Mr. McNeill contends that the evidence is insufficient to support the verdict because there was no evidence offered that the defects existed at the time that Ms. Martin purchased the house or that Mr. McNeill had any knowledge of the defects.

The party charging fraud has the burden of proving fraud. *VanBooven v. Smull*, 938 S.W.2d 324, 327–28 (Mo.App. 1997). Generally, there are nine elements of fraud that must be established: (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) the speaker's intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on it; and (9) injury. *State ex rel. PaineWebber v. Voorhees*, 891 S.W.2d 126, 128 (Mo. banc 1995). There need not be an affirmative representation for actionable fraud to exist: if a party has a duty to speak, silence can amount to misrepresentation. *Jones v. Arnold*, 359 Mo. 161, 221 S.W.2d 187, 193 (Mo.1949).

Mr. McNeill claims that Ms. Martin presented no evidence that Mr. McNeill knew of the defects in the house. However, the record reveals that there is evidence that Mr. McNeill had knowledge of the defects. The evidence is circumstantial, but "the existence of only circumstantial evidence on a material issue is no bar to recovery of and by itself." *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656, 661 (Mo. banc 1986). The evidence must establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions that could be drawn. *Id.* Liability can-

not be based upon guesswork, speculation or conjecture that goes beyond any inference that can be drawn from the record. *Wright v. Over–the–Road and City Transfer Drivers, Helpers, Dockmen, and Warehousemen,* 945 S.W.2d 481, 495 (Mo.App. W.D.1997). *See Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656, 661 (Mo. banc 1986).

■ Mr. McNeill's testimony establishes that he painted the exterior of the house before selling the home to Ms. Martin, that he helped prepare the sunroom for painting and that he supervised the repairs to the roof. Ms. Martin's witnesses testified that the painting had not been sealed and that shortcuts had been taken. Further testimony established that the sag in the roof would have been noticeable in 1992 during the rehabilitation of the house. The logical inference that can be drawn is that Mr. McNeill was in a position to know that there was no sealer on the painted areas and that the roof sagged, and that, in fact, there was no sealer on the painted areas and/or the roof was defective.

As support for his contention that there was no evidence that he had knowledge of the defects in the house, Mr. McNeill points out that he testified he did not take any shortcuts. He also points to testimony where he stated that he power washed, scraped, sanded, primed and then painted the house. The jury, however, did not have to believe such testimony. The jury could, in fact, believe that sealer had not been applied before the interior and/or the exterior of the house was painted. The jury could have also believed, from the evidence presented, that the roof sagged at the time that the house was undergoing repair.

■ This court does not assume the same position as the jury. Our function is one of review. When performing that function and examining the submissibility of a case, we view the evidence in the light most favorable to the prevailing party. *Spring v. Kansas City Area Transp. Authority,* 873 S.W.2d 224, 225 (Mo. banc 1994). When we review the verdict of the jury in a civil case, this court does not make a determination as to the credibility of the witnesses, does not resolve conflicts in testimony, and does not

weigh the evidence. *Brandt v. Csaki,* 937 S.W.2d 268, 273 (Mo.App.1996). The evidence in the instant case, viewed in the light most favorable to Ms. Martin, shows that she made a submissible case. Thus, we cannot find that the trial court erred in submitting the case to the jury.

■ Mr. McNeill also contends that there was no evidence that the defects existed prior to Ms. Martin's possession of the property. We note that this contention was not properly preserved for appellate review. It was not presented to the trial court in Mr. McNeill's post-trial motion. This court will not convict a lower court of error on an issue that was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36 (Mo. banc 1982). In any event, there was evidence that the defects in the property existed before Ms. Martin's possession. Much of the same evidence that supports the submission of Mr. McNeill's knowledge of the defects also supports the proposition that the defects existed at the time the house was renovated. For example, Mr. Gibson testified that the sag in the roof would have been apparent in 1992. Point I is denied.

### INDEPENDENT INVESTIGATION

In Point II, Mr. McNeill contends that the trial court erred in entering judgment for Ms. Martin because Ms. Martin had undertaken her own independent investigation of the house and, under Missouri law, she is thus precluded from relying on any of Mr. McNeill's representations or nondisclosures. Mr. McNeill points out that the contract entered into by the parties required that Ms. Martin make various inspections regarding the condition of the property. Ms. Martin ordered the performance of a mechanical inspection, a structural inspection and a termite inspection.

■ Mr. McNeill relies upon the rule that a party who undertakes his own investigation is not allowed to rely on the misrepresentations of another. *Misskelly v. Rogers,* 721 S.W.2d 170, 173 (Mo.App.1986). However, there are several exceptions to the general rule. A party may maintain an action for fraud where: (1) the party who makes an

independent investigation makes only a partial investigation and relies upon the results of the inspection as well as the misrepresentation; (2) the buyer lacks equal footing for learning the truth where the facts are not easily ascertainable and are peculiarly within the knowledge of the seller; and (3) the seller makes a specific and distinct representation to the buyer. *Brennan v. Molina,* 934 S.W.2d 631, 635 (Mo.App.1996). In this case it appears that both the first and second exceptions are applicable.

■ The evidence adduced at trial supports Ms. Martin's contention that Mr. McNeill had superior knowledge and that the information that was not disclosed was beyond her reasonable reach. Mr. McNeill was in the business of buying houses, fixing them up and selling them. He was present when the work on Ms. Martin's house was performed and either did the work himself or oversaw the remainder of the work. Ms. Martin did not have the opportunity to observe the work performed by Mr. McNeill or his subcontractors. Inspections of the property would not reveal that a sagging roof had been covered over with a new layer of shingles or that no primer had been applied under the painted areas.

In arguing that latent defects cannot be made the subject of misrepresentation when a buyer inspects the property, Mr. McNeill relies on *Mobley v. Copeland,* 828 S.W.2d 717 (Mo.App.1992). In *Mobley,* the plaintiff purchased property that was found to have a leaky roof, water beneath the house, and a defective swimming pool which had electrical charges running through it. *Id.* at 719. The defendants in *Mobley* did not know that there was an electrical current running through the pool, but instead, after investigation, believed the tingle in the water was due to improperly mixed chemicals. *Id.* at 722. The other defects in the property in the *Mobley* case, the leaky roof and the water beneath the house, were not latent defects. *Id.* at 726. The court found that the failure of the plaintiff to discover these problems was the result of his failure to exercise due care or reasonable diligence. *Id.* at 727. Moreover, although the *Mobley* court cites the rule concerning latent defects as dicta,

the court does not list the exceptions to the rule found in other cases.

The circumstances in the instant case are more closely akin to those in *VanBooven v. Smull,* 938 S.W.2d 324 (Mo.App.1997). In *VanBooven,* as in this case, there was a disparity between the relative positions of the parties and their opportunities to acquire knowledge. *Id.* at 328. The plaintiffs in *VanBooven* found that the carpet in their new house had been soaked with dog urine and that the urine had soaked through the padding underneath the carpet. *Id.* The defendants contended that the plaintiffs were put on notice of the condition of the carpet because the plaintiffs had seen dogs in the house prior to purchase. *Id.* at 329. This court held that the plaintiffs could not have known that the dogs were shut in the house for long periods of time without access to the yard. *Id.* Furthermore, the defendants had actual knowledge that the dogs frequently urinated on the carpet. *Id.* In the instant case, Mr. McNeill was present during the renovation of the house. He did much of the work himself. He had knowledge that the paint had not been properly applied and that the roof was sagging. Point II is denied.

## VERDICT DIRECTING INSTRUCTIONS

■ Point III states:

The Court erred in submitting two verdict directing instructions to the jury, because the verdict directing instructions are inconsistent, in that the verdict directing instruction for fraudulent misrepresentation required an affirmative representation, and the verdict directing instruction for fraudulent nondisclosure requires no representation, and the Plaintiff relied upon the same facts to support these two inconsistent verdict directors.

■ Mr. McNeill does not cite any authority supporting his argument. The only authority cited in this point relates to another claim of error asserted in the argument section of the brief, not appearing in the point relied on, concerning the wording of the instruction. Rule 84.04(d) requires that an appellant provide appropriate citation to authority in support of his contentions. *Thummel v. King,* 570 S.W.2d 679, 687 (Mo.

banc 1978). If there is no authority on the issue, then an explanation for the absence of authority is required. *Id.* In the absence of such an explanation, we may consider the point to be abandoned. The court in *Thummel* explains why, stating:

> It is not the function of the appellate court to serve as advocate for any party on appeal. That is the function of counsel. It would be unfair to the parties if it were otherwise. That is the reason for the sometimes expressed unwillingness of an appellate court to assume a role of counsel and advocate for a party on appeal. When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party on appeal, it is unfair to the parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

*Id.* at 686.

We decline to review this point. However, we do point out that Ms. Martin's theories are not necessarily inconsistent. It is possible for the jury to have rejected Ms. Martin's claim for fraudulent misrepresentation, believing that Mr. McNeill's written representation that the house had no material defects was not what Ms. Martin relied upon in making her decision to purchase the house. The jury could have concluded that the failure of Mr. McNeill to disclose that the roof sagged was a material factor in her decision to purchase the house.

The argument section of Mr. McNeill's brief also contains claims of error that are not contained in his Point Relied On. He claims, for example, that Instruction No. 7 was worded incorrectly. "A reviewing court is obliged to determine only those questions stated in the points relied on. Issues raised only in the argument portion of the brief are not presented for review." *State v. Williams,* 887 S.W.2d 769, 770–71 (Mo.App.1994). In any event, Mr. McNeill has failed to preserve this claim of error for review because of his failure to object to the instruction at trial and include such objection in his motion for new trial. *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 859 (Mo. banc 1993). Point III is denied.

## DEFENDANT'S INSTRUCTION

In his final point, Mr. McNeill contends that the trial court erred in failing to give Instruction No. B, an instruction tendered by Mr. McNeill regarding Ms. Martin's waiver of her right to rely on his disclosure statement because of her independent investigation of the premises prior to sale. The discarded instruction read:

### INSTRUCTION NO. B

Your verdict must be for defendant if you believe that plaintiff waived her right to rely on the defendant's representative (sic) by having independent investigations made of the house.

The instruction was not an M.A.I. instruction. The instruction was based upon *Mobley v. Copeland,* 828 S.W.2d 717 (Mo.App. 1992). Once again, Mr. McNeill has presented this Point without citing any authority in support. It is also a misstatement of the law, as is discussed earlier in this opinion. Point IV is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.