Paula KEEFHAVER, Appellant,

v.

David KIMBRELL, J.D. Reece
Company, Defendant,

Daneth WEESE, Donna Weese,
Respondents.

No. WD 59446.

Missouri Court of Appeals,
Western District.

Oct. 9, 2001.

56

Alan Dietchman, Liberty, for appellant.

Gary M. Steinman, Gladstone, for respondent.

Before BRECKENRIDGE, P.J., ELLIS, J., and TURNAGE, S.J.

WILLIAM E. TURNAGE, S.J.

Paula Keefhaver brought suit against Daneth and Donna Weese for fraudulent misrepresentation in the sale of a home.[1] The Weeses filed a motion for directed verdict at the close of Ms. Keefhaver's case. The trial court sustained the motion and entered judgment for the Weeses. Ms. Keefhaver appeals and contends that the trial court misapplied the law in finding that the Weeses' disclosure of material defects was sufficient and that she did not have a right to rely on the Weeses' representations.

Judgment reversed and cause remanded.

Paula Keefhaver purchased a twenty-five year old house from Daneth and Donna Weese. Prior to signing the real estate sale contract, Ms. Keefhaver spent approximately 35 minutes viewing the property

---

1. Ms. Keefhaver also sued the Weeses under negligent misrepresentation and breach of contract but does not raise any points of error in her brief regarding the trial court's judgment against her on those claims. Any error pertaining to the claims are, therefore, deemed abandoned or waived. *St. Louis County v. B.A.P., Inc.,* 18 S.W.3d 397, 401 n. 2 (Mo.App. E.D.2000).

with her real estate agent. She then went with her agent back to his office where she reviewed the seller's disclosure statement prepared by the Weeses and discussed inspections of the property with her agent. She then signed the sale contract agreeing to purchase the house for $71,900. Ms. Keefhaver also signed an inspection notice waiving an inspection of the house.

The seller's disclosure statement signed by the Weeses and given to Ms. Keefhaver stated that the Weeses agreed to disclose all material defects, conditions, and facts known to them that may materially affect the value of the property. In the statement, the Weeses indicated "Yes" to the question "Roof leaking during your ownership?" They also indicated that a complete roof replacement was done during their ownership. The Weeses further explained the two answers in a handwritten note, "replaced roof 1991." The Weeses answered "No" to the question "Repairs during your ownership?" Secondly, the Weeses marked "Yes" to the question "Any drainage or flood problems on the property or adjacent properties?" They then explained their answer, "in regards to drainage problem fill dirt to be brought in to place around foundation." Additionally, the Weeses marked "Yes" to the questions "Any cracks or flaws in the wall, ceilings, foundations, concrete slab, crawl space, basement floor or garage?" and "Any water leakage or dampness in the house crawl space or basement?" In explaining the answers, the Weeses wrote, "In process of having fill dirt [laid] around foundation to eliminate drainage problem in basement." Finally, to the question "Any past or present problems with driveways, patios, decks, fences, or retaining walls on the property?" the Weeses indicated "No."

One month after Ms. Keefhaver moved into the house, a heavy rainstorm caused a foot of water in the basement and a large water spot on the ceiling in the living room. Thereafter, while painting the exterior of the house, Ms. Keefhaver leaned a door against the deck, and "the whole deck fell in."

Ms. Keefhaver filed a petition for damages against the Weeses and the realtor, J.D. Reece, and its agent, David Kimbrell. In Counts I, II, and III against the Weeses, Ms. Keefhaver alleged fraudulent misrepresentation, negligent misrepresentation, and breach of contract. In Counts IV and V against J.D. Reece and Mr. Kimbrell, Ms. Keefhaver alleged breach of contract and breach of fiduciary duty. This case was tried to the court. At the close of Ms. Keefhaver's evidence, the trial court granted the Weeses' motion for directed verdict on Counts I, II, and III. Judgment was also entered in favor of J.D. Reece and Mr. Kimbrell on Counts IV and V at the close of all of the evidence. This appeal from the judgment in favor of the Weeses followed. Ms. Keefhaver does not appeal the judgment concerning J.D. Reece and Mr. Kimbrell.

 In her sole point on appeal, Ms. Keefhaver claims that the trial court erred in entering judgment in favor of the Weeses on her claim for fraudulent misrepresentation. She contends that the trial court misapplied the law in finding that the Weeses' disclosure of material defects was sufficient and that she did not have a right to rely on the Weeses' representations.

In a trial without a jury, the judge is not only the trier of facts but also the determinant of whether the plaintiff has shown a right to relief. It is for this reason that the motion for directed verdict, so apt in a jury case to differentiate the judge function as to whether the evidence is submissible from the jury function to find the facts and return a verdict under the instructions of the

court, has no role or function in a trial to the court without a jury. *City of Hamilton v. Pub. Water Supply Dist. No. 2,* 849 S.W.2d 96, 100 (Mo.App. W.D.1993) (citations omitted). In short, in a court-tried case, a motion for directed verdict should not be made at the close of the plaintiff's case, and an appeal from such ruling is of limited value. *Id.* The proper motion after a plaintiff has completed presentation of her evidence is a motion for judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief.[2] Rule 73.01(b); *Ware v. McDaniel,* 899 S.W.2d 170, 172 (Mo.App. W.D.1995). Even though inappropriate, a motion for directed verdict in a court-tried case also submits the issue for decision on the merits. *Colombo v. Buford,* 935 S.W.2d 690, 694 (Mo.App. W.D.1996); *City of Hamilton,* 849 S.W.2d at 100. An appeal from the action of the court in sustaining such motion is from a final determination of the issues and is governed by Rule 73.01 and *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Thus, review is not for submissibility but is under the standard stated in *Murphy. City of Hamilton,* 849 S.W.2d at 100. In reviewing the judgment, an appellate court views the evidence and reasonable inferences therefrom in the light most favorable to the judgment disregarding all contrary evidence. *Colombo,* 935 S.W.2d at 694.

■ Neither Ms. Keefhaver nor the Weeses requested findings of fact and conclusions of law in this case. Where neither party in a court-tried case requests findings of fact and conclusions of law under Rule 73.01(c), the trial court's stated findings and conclusions for its judgment are gratuitous only. *Testerman v. Dir. of Rev-*

*enue,* 31 S.W.3d 473, 477 (Mo.App. W.D. 2000); *Colombo,* 935 S.W.2d at 693. Such gratuitous findings and conclusions form a basis for assigning error and may be considered by the appellate court in determining whether the trial court erroneously applied or declared the law. *Graves v. Stewart,* 642 S.W.2d 649, 651 (Mo. banc 1982); *Colombo,* 935 S.W.2d at 693.

■ To recover for fraud, a plaintiff must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of falsity of the representation or ignorance of its truth; (5) the speaker's intent that the representation be acted upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on the representation; and (9) injury. *Wasson v. Schubert,* 964 S.W.2d 520, 526 (Mo. App. W.D.1998). Failure to establish any one of the elements of fraud is fatal to recovery. *Slone v. Purina Mills, Inc.,* 927 S.W.2d 358, 371 (Mo.App. W.D.1996) (citing *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988)).

■ The trial court found that Ms. Keefhaver failed to prove two elements in her fraud claim: that the Weeses made a false representation and that Ms. Keefhaver had a right to rely on the representations. The trial court first found that the Weeses did make substantial disclosures. It explained that the Weeses acknowledged problems with the house in the disclosure statement and that such acknowledgements were "immediate flags" that potential problems existed. The court further found that some problems about which Ms. Keefhaver complained, specifically water runoff from the sloped drive-

---

**2.** The filing of such motion does not constitute waiver of the defendant's right to offer evidence. Rule 73.01(b).

way, were obvious by looking at the house and did not need to be disclosed.

 An affirmative representation is not necessarily required for actionable fraud to exist. *Murray v. Crank*, 945 S.W.2d 28, 31 (Mo.App. E.D.1997). Silence or concealment of facts can amount to misrepresentation and serve as a substitute element for a false and fraudulent misrepresentation if the silent party has a duty to speak. *Id.; VanBooven v. Smull*, 938 S.W.2d 324, 328 (Mo.App. W.D.1997); *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 720 (Mo.App. W.D.1995). The duty to disclose information arises either from a classic fiduciary relationship or where one party has superior information not reasonably available to the other party. *Murray*, 945 S.W.2d at 31; *VanBooven*, 938 S.W.2d at 328; *Ringstreet Northcrest*, 890 S.W.2d at 720.

Ms. Keefhaver alleges that the Weeses failed to disclose material defects involving the roof, basement, and deck. The Weeses claim that they did not know that their representations were false, or specifically, that they had no knowledge of the defects for which Ms. Keefhaver is complaining. In their disclosures regarding the roof, the Weeses represented to Ms. Keefhaver that the roof leaked prior to its replacement in 1991 and that the replacement resolved any leakage problems. The evidence presented at trial revealed, however, that the Weeses continued to experience problems with leaks in the roof after 1991. Mrs. Weese testified that a tree limb fell on the roof in 1994 causing leaking and a water spot on the living room ceiling. Mrs. Weese explained that they repaired the roof with minor patching. Finally, Mrs. Weese testified that they painted the ceilings six months before selling the house. Additionally, Michael Skeens, a certified professional building designer and an International Conference of Building Officials special inspector, testified that he inspected the home 10 to 12 months after Ms. Keefhaver moved in. He explained that he found indications in the roof and on the ceilings of active roof leaks over one year old, which would have been during the time of the Weeses' ownership.

In their disclosures regarding the basement, the Weeses disclosed only moisture problems in the basement caused by the settling of the house. Mrs. Weese testified that they made the disclosures because they had experienced moisture or dampness in the basement. She explained that she was told by a builder to put fill dirt around the foundation because the house had settled and settling may cause moisture. Mrs. Weese denied ever having standing water in the basement. She admitted, however, that because the steep driveway sloped to the garage, water would enter the basement under the garage door once or twice a year during a heavy rain. Mr. Skeen testified that he observed rutting that indicated that in heavy rain, water cascaded off the street, down the driveway, and into the garage. He explained that such drainage appeared to be happening "for some time" over one year.

Finally, the disclosure statement indicated that the Weeses had not had any problems with the deck. Mrs. Weese testified that her family used that deck frequently during their ownership and that they did not have any problems with it. She did admit, however, that they had to replace an occasional rotted board on the deck.

The conditions of the roof, basement, and deck were material and were known to the Weeses. The Weeses had superior knowledge concerning such conditions, which was not within the fair and reasonable reach of Ms. Keefhaver. The Weeses, however, failed to disclose any problems with active roof leaks or the leak and

repairs in 1994. Furthermore, they did not disclose the fact that water entered the basement from the driveway during heavy rains. Their disclosure regarding the basement represented that moisture problems with the settling of the house would be resolved by laying fill dirt around the foundation of the house. Finally, the Weeses failed to disclose that they had had to replace rotted boards on the deck. The Weeses' disclosure misrepresented and concealed material facts known to the Weeses about such conditions. The trial court, therefore, erroneously declared and applied the law in finding that the Weeses' disclosures were sufficient.

█ In denying Ms. Keefhaver's fraud claim against the Weeses, the trial court also found that Ms. Keefhaver did not have a right to rely on representations in the disclosure statement because of the hurried nature of the sale. The court explained that although Ms. Keefhaver had the right to reasonable reliance, she had an obligation to make a reasonable viewing of the property and come to some kind of reasonable conclusions. The Weeses also claim that Ms. Keefhaver failed to prove that she, in fact, relied on their representations in making her decision to purchase the home.

█ The concept of fraud liability based upon nondisclosure couches reliance in terms of the availability of the information to the plaintiff and the plaintiff's diligence. *VanBooven*, 938 S.W.2d at 328. A plaintiff asserting fraud must show that the undisclosed information was beyond her reasonable reach and not discoverable in the exercise of reasonable diligence. *Id.* "[T]he modern trend is not to extend but to restrict the rule requiring diligence in persons to whom representations are made, and to condemn the falsehood of the person making the representation, rather than the credulity of the victim." *Reis v.*

*Peabody Coal Co.*, 997 S.W.2d 49, 62 (Mo. App. E.D.1999). A person is entitled to rely on a representation where (1) she lacks equal facilities for learning the truth; (2) where the facts are peculiarly within the knowledge of the speaker and difficult for the hearer to ascertain; (3) where the representation relates to latent defects; (4) where it would be necessary to employ a third person to make an examination in order to discover the truth because of the hearer's ignorance and inexperience; and (5) where the employment of an expert would be required. *VanBooven*, 938 S.W.2d at 329. The right to rely on a representation is generally a question of fact. *Id.* at 328.

In this case, Ms. Keefhaver did not stand on equal footing with the Weeses, and the truth regarding the condition of the roof, basement, and deck was peculiarly within the knowledge of the Weeses. Usually a seller who has lived in a house will have knowledge concerning the property superior to a buyer's knowledge. *Wasson*, 964 S.W.2d at 527. Additionally, the defects of the roof, basement, and deck were latent and were not easily ascertainable. The defects were beyond Ms. Keefhaver's reasonable reach and were not discoverable in the exercise of reasonable diligence. Ms. Keefhaver, therefore, had a right to rely on the representations of the Weeses. The trial court's finding and conclusion that Ms. Keefhaver did not have a right to rely erroneously declared and applied the law.

█ Finally, the evidence revealed that Ms. Keefhaver did rely on the representations of the Weeses. After reviewing the Weeses' disclosure statement, Ms. Keefhaver signed the real estate sale contract agreeing to purchase the house for $71,900. She testified that she believed the price was a fair one if the disclosure statement was true and that she believed

the house was worth $60,000 to $65,000 in its actual condition. Ms. Keefhaver testified that she would not have purchased the house if the defects with the roof, basement, and deck had been disclosed to her. Ms. Keefhaver stated that she did rely on the disclosure statement in making her decision to purchase. Finally, Ms. Keefhaver testified that she relied on the representations in the disclosure statement in making her decision not to conduct an inspection. *See Wasson*, 964 S.W.2d at 527.

This opinion only addresses the propriety of the ruling on the motion for directed verdict. The judgment of the trial court in favor of the Weeses is reversed, and the case is remanded for further proceedings. The trial court will undoubtedly hear the Weeses' evidence and will decide the case at that time on the credibility of witnesses and the law.

BRECKENRIDGE, P.J., and ELLIS, J., concur.