Freddy J. PRATER and Mary Prater, His Wife, Plaintiffs-Respondents,

v.

Horton STUBBLEFIELD and Estelle Stubblefield, His Wife, Defendants-Appellants.

No. 34283.

Missouri Court of Appeals, St. Louis District, Division One.

July 18, 1972.

Dearing, Richeson, Roberts & Wegmann, Jack C. Stewart, Hillsboro, for defendants-appellants.

Gregory D. O'Shea, Barnhart, for plaintiffs-respondents.

DOERNER, Commissioner.

Count I of plaintiffs' petition in this court-tried case was founded on breach of contract, and Count II on trespass. The court rendered judgment for plaintiffs for $250.00 on Count I, and for plaintiffs for actual damages of $365.00 and punitive damages for the same amount on Count II, and defendants' appeal followed.

This action arose out of and followed plaintiffs' purchase from defendants of a house and lot situated in High Ridge, Missouri. Pursuant to Stubblefield's request to Billy B. Brown, of the B. & L. Real Estate Company, that he find a buyer for the property, Brown procured the plaintiffs as prospects. During their inspection of the house, in company with Brown, plaintiffs observed that the glass in eleven windows was either missing or cracked, and stated that they would require the defendants to " * * * put them in * * *" before they bought the property. Subsequently, on October 22, 1968, in the presence of Brown, plaintiffs signed a sales contract for the purchase of the property. The contract provided that the property was "to be accepted in its present condition unless otherwise stated in contract. * *" The only statement inserted in the printed form was "County water to be hooked up & broken windows replaced." Stubblefield signed the contract later. Mrs. Stubblefield never did sign it.

After plaintiffs had moved into the house, on November 25, 1968, plaintiffs discovered that the furnace was not operable and that the roof leaked. They had the furnace repaired, at a cost of $15.00, and Prater repaired the roof, expending $6.00 for shingles and his own labor, which he valued at $25.00. Plaintiffs replaced a picture window with a hole from a BB pellet in it, at a cost of $22.00, but conceded during the trial that defendants were not liable therefor. Plaintiffs also discovered

that one of Stubblefield's "hands" had replaced the glass which had been missing from three of the windows and that the glass had not been replaced in eight in which the glass was cracked. Plaintiff replaced the eight panes at a cost of $1.00 each.

Plaintiffs in Count I sought damages of $2500.00 for breach of the sales contract. No representations or conversation of any kind regarding the furnace or the roof occurred prior to plaintiffs' execution of the written sales contract. Inasmuch as the contract expressly provided that the property was to be accepted in its then condition, and the only exception stated therein related to "broken windows," it is obvious that the only valid claim plaintiffs might have for breach of contract involved the windows. Defendants' failure and refusal to pay for the replacement of the glass in the eight windows is based on the contention that a "cracked window" is not a "broken window," that is, one in which the glass is missing. We believe that to be too narrow and strained an interpretation of the word "broken." As one member of the court indicated during oral argument, a cracked window pane certainly is not unbroken. Like many words in the English language the word "broken" has various meanings depending upon the context in which it is used, as will be observed by a reference to Webster. For example, it may imply impoverishment, Walsh v. Kennedy, 115 Mont. 551, 147 P.2d 425, 430. And a reference to a broken arm, Miley v. Fireside Mut. Ins. Co., La. App., 200 So. 505, 507, or a broken hip, Backman v. Fitch, 272 Minn. 143, 137 N.W. 2d 574, 577, conveys the sense of fractures of those parts of the body, not that they are missing. In short, we are of the opinion that defendants were liable for breach of contract in failing to replace the glass in the eight windows, and that plaintiffs were entitled to a judgment for $8.00, but no more. While Mrs. Stubblefield did not sign the sales contract in effect she ratified and adopted it by her participation

in the closing of the sale and her execution of the deed called for therein.

On November 24, 1968, after the plaintiffs had signed the sales contract but prior to its closing, Prater observed that eight fruit trees which had been growing on the property at the time the contract was signed by them had been removed. Prater complained on that day to Brown, who advised that he was unaware of the removal of the trees but that he would return their down payment to plaintiffs if they wished. The next day Brown informed Prater that Stubblefield had removed the fruit trees, and again told Prater that if they wished plaintiffs could cancel the contract and receive back their down payment. However, plaintiffs moved into the house on November 25, 1968 (by what right was not shown) and the sale of the property was closed on November 27, 1968.

In Count II of their petition plaintiffs alleged " * * * that after the closing of the deal, purchasing said house and execution of the deed * * * " the defendants, without permission, entered upon the property and removed the fruit trees; that " * * * as a direct result of said entering upon said property and trespass" it had been damaged and depreciated in the amount of $1,000; and that "said entering and trespass * * * " of defendants was wilful and malicious. Their prayer was for actual damages of $1,000.00 and punitive damages of $5,000.00.

Had the removal of the fruit trees occurred after the defendants had transferred title and possession of the property to plaintiff, as plaintiffs alleged in their petition, plaintiffs could have maintained an action of trespass. But Prater's own testimony, as well as that of plaintiffs' witnesses clearly showed that such removal had been made by Stubblefield not only prior to the closing of the sale but prior to the time plaintiffs had obtained possession of the property. The gist of an action for trespass quare clausum fregit is the injury to possession, and in England the rule

has always been that actual possession was necessary. 87 C.J.S. Trespass § 22, pp. 972, 973. However in Allen v. Wehrman, Mo.App., 204 S.W.2d 464, 467, where the trustees of a cemetery were in constructive possession, this court said that "The possession required to maintain an action in trespass does not mean occupancy of the property in question and constructive possession is sufficient to meet the requirement. * * *" And in Schmidt v. City of Tipton, Mo.App., 89 S.W.2d 569, it was held that one who had entered into a contract to buy land, and was given possession prior to the closing of the sale, could maintain an action of trespass.

■ Ordinarily a purchaser of land is not entitled to possession until he has obtained his deed, unless the contract of sale confers a right of possession prior to that time. Tinnon v. Tanksley, Mo., 408 S.W.2d 98, 104. In the instant case the contract called for the sale to be closed, and title to pass, "* * * on *December 1st 1968* or on such prior date as the parties hereto may agree." It also provided that "Possession of property to be delivered to purchaser at time of transfer of title, or on ———." Apparently the parties mutually agreed that the sale would be closed, and the title be passed, on November 27, 1968. But there was no evidence that defendants gave plaintiffs permission to take possession of the property on November 25, 1968, and in any event plaintiffs' own evidence showed that the removal of the fruit trees occurred prior to that date, when defendants were in at least constructive possession as the legal owners. Whatever other cause of action plaintiffs may have or had, it follows that they could not maintain an action for trespass since they were in neither actual nor constructive possession at the time the trees were removed.

The judgments on both Count I and II are *reversed, and the cause is remanded* to the trial court with directions to enter a judgment in favor of plaintiffs and against defendants in the sum of $8.00 on Count I, and in favor of defendants on Count II. Costs of this appeal shall be paid one-half by plaintiffs and one-half by defendants.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgments on Counts I and II reversed and cause remanded with directions.

BRADY, C. J., and WEIER, and CLEMENS, JJ., concur.