Louis MURRAY and Colleen Murray, Plaintiffs/Appellants,

v.

David CRANK and Sharon Crank, Defendants/Respondents.

No. 71046.

Missouri Court of Appeals, Eastern District, Division Four.

April 29, 1997.

J.B. Carter, Kirkwood, Kevin A. Nelson, St. Louis, for appellant.

James T. Barry, Jr., Gregory F. Herkert, St. Louis, for respondent.

RHODES RUSSELL, Presiding Judge.

This case arises from the trial court's grant of David and Sharon Crank's ("sellers") motion for summary judgment on Louis and Colleen Murray's ("buyers") petition alleging breach of contract, breach of implied warranties of habitability and fitness for purpose, and intentional misrepresentation in the sale of real property. We affirm in part and reverse and remand in part.

Sellers owned a home located in Sunset Hills across the street from a golf course. Prior to purchasing, Louis Murray toured the inside of the residence several times. In December 1989, he did a walk-through of the house. A month later, he returned to the house to discuss the sale and conducted another walk-through. Murray made a third trip to the residence in February to conduct a visual inspection of the interior and exterior of the home prior to signing the contract with sellers. During his walk-throughs of the house, he toured the basement and other rooms. He did not, however, go on top of the roof to inspect it.

Murray contacted several roofers regarding inspecting the roof. He had been told by Sharon Crank that the roof was a "lifetime roof", and after hearing that, he decided to investigate the condition of the roof. Murray contacted Connelly Roofing Company to inspect the roof who informed him that they were too busy to conduct an inspection, but that they would do a drive by visual of the residence at no charge. After conducting the drive by visual of the residence, the roofing company told Murray that it had observed a little sagging here and there, but in general, the roof looked okay.

On February 13, 1990, the parties executed the sales contract. David Crank requested that Murray handwrite in the language, "In as is condition,"under the property's description. Both David and Sharon Crank signed the sales contract, but only Louis Murray signed the contract on behalf of buyers. On April 25, 1990, sellers delivered to buyers a general warranty deed.

A few months after closing, buyers began to experience problems with golf balls bombarding their property. The golf course had changed the location of its twelfth tee by moving it east and south of its prior location. This change resulted in numerous golf balls being hit on to buyers' property. Golf balls hit the clay tile roof, walls, windows, air conditioning unit, satellite dish, and grounds. In their affidavits in support of their summary judgment motion, sellers maintained that they never had problems with errant golf balls entering upon the property when they resided there.

Buyers also experienced water problems with the home. According to Louis Murray, the basement filled up with water because the downspouts did not channel water away from the house. He also claimed that a pipe in the basement leaked. In the latter part of 1990, buyers discovered that many of the roof's tiles were broken or cracked and had to be replaced by them.

Buyers filed suit against sellers in the Circuit Court of St. Louis County. Count I of the petition stated that sellers breached the sales contract by failing to provide full disclosure of the "errant golf ball problems," the water problems, and the cracked and/or broken roof tiles. Count II of the petition stated that sellers breached the implied warranty of habitability of property and fitness of purpose. Count III of the petition stated that sellers fraudulently induced buyers to enter into a contract for sale of the residence. Buyers alleged that sellers fraudulently represented, or by their silence represented, to buyers during their inspection of the proper-

ty, that there were no errant golf ball problems, no water problems, and no cracked roof tiles.

Sellers moved for summary judgment on all three counts. Sellers argued that they were entitled to summary judgment on Count I as to Colleen Murray because she had no standing to assert a cause of action for breach of contract. Sellers also argued that they were entitled to summary judgment as to Louis Murray because the property was sold "as is", and therefore, sellers had fulfilled all of the obligations imposed by the contract. Sellers argued that they were entitled to summary judgment on Count II because buyers were not the first purchasers of the property, and therefore, no implied warranties were imposed upon them as a matter of law.[1] Finally, sellers argued summary judgment should be entered upon Count III because they were unaware that the golf course was changing the location of its twelfth tee, and that their use of the property was never infringed or impaired by errant golf balls while they resided at the property.

Buyers filed a motion to stay sellers' motion for summary judgment, stating that they needed additional time to take depositions of sellers. The trial court granted buyers' motion to stay consideration of sellers' motion for summary judgment until after July 15, 1996. On July 29, 1996, buyers filed their response in opposition to sellers' motion for summary judgment. The trial court granted sellers' motion for summary judgment the same day. This appeal follows.

When considering whether a grant of summary judgment was proper, we review the record in the light most favorable to the party against whom judgment is entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). A summary judgment is proper when the movant demonstrates that there are no genuine disputes as to a material fact and that the movant is

---

1. On appeal, buyers do not raise an issue regarding the propriety of granting summary judgment on the implied warranty of habitability claim. Therefore, the Count II claim is deemed abandoned. *See Mobley v. Copeland,* 828 S.W.2d 717, 718 n. 1 (Mo.App.1992). Furthermore, the cause

of action for implied warranty of habitability is available only to the first buyer of a new house purchased from a builder-vendor. *Hines v. Thornton,* 913 S.W.2d 373, 375 (Mo.App.1996). The undisputed facts in this case indicate that buyers were the second purchasers of the home.

entitled to judgment as a matter of law. *Id.* at 380. A movant, who is a defending party, may establish that he or she is entitled to a judgment as a matter of law by showing facts which negate an essential element of plaintiff's *prima facie* case. *Id.* at 381.

In their first point, buyers challenge the trial court's summary disposition of Count III claiming fraudulent misrepresentation.

■ The elements of a submissible case of fraudulent misrepresentation are: 1) a false, material representation; 2) the speaker's knowledge of its falsity or his/her ignorance of the truth; 3) the speaker's intent that his/her representation should be acted upon by the hearer in the manner reasonably contemplated; 4) the hearer's ignorance of the falsity of the representation; 5) the hearer's reliance on the representation being true; 6) the hearer's right to rely thereon; and 7) the hearer's consequent and proximately-caused injuries. *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 689 (Mo.App.1994)(citing *Clark v. Olson,* 726 S.W.2d 718, 721 (Mo. banc 1987)).

Buyers do not assert that sellers affirmatively represented that there were no problems with errant golf balls, water, or broken roof tiles, but instead, argue that sellers were aware of these problems and failed to disclose them.

■ An affirmative representation is not always required for actionable fraud to exist. Silence can equal misrepresentation if the silent party has a duty to speak. *Mobley v. Copeland,* 828 S.W.2d 717, 724 n. 6 (Mo.App. 1992). Concealment of a fact which one has a duty to disclose serves as a substitute element for a false and fraudulent representation in the tort of fraud. *Triggs v. Risinger,* 772 S.W.2d 381, 382 (Mo.App.1989). The duty to speak or disclose facts arises either from a trustful, confidential relationship or where one party has superior information not reasonably available to the other party. *State ex rel. PaineWebber, Inc. v. Voorhees,* 891 S.W.2d 126, 129 (Mo. banc 1995). If buyers cannot provide proof of all the elements of intentional misrepresentation, a trial court may grant sellers' motion for sum-

mary judgment on that count of the petition. *Colgan,* 879 S.W.2d at 689.

In *Mobley,* purchasers of a residence brought suit against vendors alleging fraud and breach of implied warranty of habitability. Purchasers alleged that vendors failed to disclose that several air vents throughout the residence were unconnected and that there were electrical charges running through the swimming pool. Purchasers, however, presented no evidence that vendors were aware of the air vent problems or the electrical current in the pool. The Southern District found that the purchasers failed to establish a submissible case of fraudulent nondisclosure with respect to these two claims because there was no evidence that the vendors were aware of the conditions. 828 S.W.2d at 725.

■ As in *Mobley,* sellers specifically disavowed in their affidavits that they had any problems with golf balls intruding upon the property when they owned it. Furthermore, sellers stated that they were unaware that the twelfth tee's location would be moved. In their response to sellers' motion for summary judgment, buyers offered no evidence to contradict sellers' disclaimers of knowledge about "errant golf ball" problems. Rule 74.04(e) states that "an adverse party may not rest upon mere allegations or denials of the party's pleading, but the response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." The trial court properly granted summary judgment to sellers on buyers' fraudulent misrepresentation claim in regards to the "errant golf ball" problems.

Buyers also contend that the trial court erred in granting sellers' motion for summary judgment as to buyers' claims of fraudulent misrepresentation for water problems and broken roof tiles. Buyers maintain that summary judgment was improper as to these two claims because sellers' motion for summary judgment and the affidavits submitted did not address these claims. We agree.

■ Rule 74.04(c)(1) requires that summary judgment motions "shall state with particularity in separately numbered paragraphs each material fact as to which the movant

claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts." Neither sellers' motion for summary judgment, nor their affidavits, addressed buyers' claim of fraudulent misrepresentation for the water or roof tile problems. Therefore, sellers' motion for summary judgment and its supporting affidavits are devoid of material facts showing entitlement to judgment as a matter of law. *See United Bank of Union v. Hartford Fire Ins. Co.*, 891 S.W.2d 575, 577 (Mo.App.1995). The trial court erred in granting summary judgment as to buyers' fraudulent misrepresentation claims for water and broken roof tile problems. Since the trial court erred in granting summary judgment with respect to these two claims, we reverse and remand for further proceedings on these issues.

In their final point, buyers contend the trial court erred in granting sellers' motion for summary judgment as to their breach of contract action, because a genuine issue of material fact exists as to whether Colleen Murray had standing to sue. We need not address whether Colleen Murray had standing to sue for breach of contract because the grant of summary judgment was proper in that the contract language expressly provided that the residence was to be sold "as is." Therefore, the issue of standing is moot.

In *Prater v. Stubblefield*, 483 S.W.2d 669 (Mo.App.1972), purchasers brought a breach of contract action against vendors to fix the broken windows in the residence bought by purchasers. Before entering into the contract for sale, purchasers inspected the residence and noticed that eleven windows were broken. Purchasers stated that vendors would have to repair the windows before they bought the property. The parties entered into a sales contract which provided that the property was to be *"accepted in its present condition* unless otherwise stated in the contract." *Id.* at 670 (emphasis ours). The contract also provided that the broken windows were to be fixed. After moving into the home, purchasers discovered that the furnace was not operable, the roof leaked, and that eight of the windows had not been repaired. *Id.*

Purchasers made repairs to the roof and the windows, and then brought suit against vendors for breach of contract in the amount of $2,500. The trial court awarded purchasers $250 on the breach of contract count, but this court reversed and ordered that judgment on the breach of contract count be entered in favor of purchasers for the amount of $8, the cost of repairing the windows. This court stated that no representations regarding the furnace or the roof occurred prior to the purchasers' execution of the written sales contract and that "[i]nasmuch as the contract expressly provided that the property was to be accepted in *its then condition*, and the only exception stated therein related to 'broken windows,' it is obvious that the only valid claims plaintiffs might have for breach of contract involved the windows." *Id.* at 671 (emphasis added).

Here, the sales contract clearly stated that the residence was to be sold "as is." There were no representations contained in the sales contract concerning errant golf balls, water problems, or the condition of the roof. No conversation concerning errant golf balls or water problems occurred before the execution of the contract. The only statement concerning the roof was Sharon Crank's remark that the roof was a "lifetime roof." This statement, however, does not constitute an express warranty or guarantee. In Louis Murray's deposition testimony, he stated that he understood that the "as is" provision was another way of saying that "what you see is what you get."

The trial court did not err in granting sellers' motion for summary judgment with respect to buyers' breach of contract action. Point two is denied.

The trial court's grant of summary judgment with respect to Count III of buyers' petition on buyers' claim for fraudulent misrepresentation on water problems and broken roof tiles is reversed and remanded. In all other respects, the grant of summary judgment is affirmed.

SIMON and KAROHL, JJ., concur.