**Thomas H. EGAN, Appellant,**

v.

**Clyde E. CRAIG, Respondent.**

**No. 72578.**

Missouri Court of Appeals, Eastern District, Division One.

March 3, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 1997.

Application for Transfer Denied June 16, 1998.

Daniel J. McMichael, McMichael & Logan, Timothy A. Engelmeyer, Chesterfield, for appellant.

Robert Solomon Rosenthal, Brown & James, P.C., St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Thomas H. Egan ("plaintiff"), appeals the judgment of the Circuit Court of the City of St. Louis granting respondent's, Clyde E. Craig ("defendant"), motion for summary judgment on plaintiff's malpractice claim. We reverse and remand.

Plaintiff sued defendant alleging defendant mishandled and misadvised plaintiff in his claim for handicap discrimination against his former employer. Specifically plaintiff claimed defendant incorrectly advised plaintiff that he did not have to file a complaint with the Missouri Commission on Human

Rights ("MCHR") before bringing suit.[1] Plaintiff believed he was discharged from his job because he had been previously diagnosed with multiple sclerosis ("MS").

Plaintiff worked as an alarm technician with Wells Fargo Alarm Services, Inc., from 1974 until he was discharged on or about June 1, 1991.[2] As a technician, plaintiff would service alarm systems and determine why a system may have triggered a false alarm. His work required him to travel to and from homes and businesses where alarm systems were installed, to use various hand tools, and to climb over obstacles and up ladders in order to service the alarms. Occasionally, plaintiff would work in the office as an operator answering calls.

Plaintiff began experiencing balance problems as well as tingling in his right side, especially his arm and leg, in 1985. He sought medical attention for this problem in 1986. In April 1990, plaintiff sought medical treatment for numbness which caused him to limp. Plaintiff also sought treatment from another doctor to whom he reported various health problems, including difficulty walking, incidents of falling, difficulty lifting objects out of his truck at work and climbing a ladder, numbness in his fingers, and difficulty in controlling his bowels. On June 7, 1990, plaintiff experienced problems at work affecting his balance, eyesight, speech and coordination. He left work and was hospitalized later that week. He was subsequently diagnosed with MS.

Plaintiff did not thereafter return to work at Wells Fargo as an alarm technician. On October 21, 1990, plaintiff completed an application for Social Security disability benefits with the aid of his wife and a Social Security Administration ("SSA") worker.[3] Section D of the application asks, "WHAT IS YOUR DISABLING CONDITION? (Briefly explain the injury or illness that stops you from working.)" In the space provided on the disability report form, plaintiff replied,

Multiple sclerosis—Ataxia (falling) uses cane, dizzy, optic nerve damage, heat sensitivity, chronic fatigue, can't get driver's lience [sic]—Bladder & [sic] bowel disfunction[,] weakness on left arm[,] short term memory loss.

Plaintiff cited these same conditions in response to question 3B. under section D, which asked plaintiff to explain how his condition "now keeps [him] from working." Plaintiff also reported his condition first bothered him on June 7, 1990, his last day of work. In Part III, which focused on information about plaintiff's activities, plaintiff was asked, "Has your doctor told you to cut back or limit your activities in any way?" Plaintiff checked the "yes" box and then completed the follow-up question on "the name of the doctor ... and ... what he or she told you about cutting back or limiting your activities." Plaintiff responded Dr. Richard Sohn, a neurologist, "told me, ... I would not be able to perform *any* type of work." (emphasis in original). All of plaintiff's previous employment involved servicing, installing, or other physically demanding feats. In the final portion of the application, under "REMARKS," plaintiff reported he also suffered from diabetes.

Shortly after plaintiff applied for disability benefits, his doctor released him to work with certain restrictions.[4] These restrictions prevented plaintiff from performing his job as an alarm technician insofar as plaintiff was unable to meet the physical demands found in that line of work. However, plaintiff felt he was able to work as an operator in the Wells Fargo office within the limits set forth by his doctor. Plaintiff had filled in as an operator during his employ with Wells Fargo and needed only minimal training in order to perform the job full-time. In November of

---

1. RSMo section 213.075 (1986) mandated a complaint be filed with MCHR within 180 days of the alleged act of discrimination.

2. Wells Fargo purchased Potter Electric, who was plaintiff's original employer, in 1982.

3. The SSA worker conducted a telephone interview with plaintiff and his wife. At the time

plaintiff applied for disability benefits, he suffered from fatigue associated with his MS.

4. Persons diagnosed with MS experience periods when they are able to lead fairly normal lives and experience other periods when the disease is exacerbated and therefore more disabling.

1990, plaintiff contacted someone at Wells Fargo, inquiring about the availability of an operator position and expressing his interest in obtaining such. He was informed that no position was available at the time. However, under the collective bargaining agreement which controlled the terms of plaintiff's employment, plaintiff was to be informed of the availability of any such position if and when one opened.[5]

In December, 1990, plaintiff's application for social security disability benefits was approved by the SSA. The benefit payments began in January of 1991 and were retroactive to June 7, 1990, the last date plaintiff worked due to MS. In February or March of 1991, plaintiff reiterated his interest in obtaining an office position with Wells Fargo. Then, in early June, plaintiff learned a new operator had been hired in the office. While unclear if the new operator had transferred from another area at Wells Fargo or was simply a new hire, the record shows plaintiff was not informed of the availability of an operator's position, contrary to the terms of the collective bargaining agreement.[6] The position had opened in April of 1991, while plaintiff still had seniority, according to plaintiff's deposition testimony. Plaintiff thereafter filed a grievance with the union concerning the incident. During this process, plaintiff spoke to a Wells Fargo representative concerning plaintiff's ability to work as an operator. According to plaintiff's deposition testimony, this representative told plaintiff, "You can't do anything, you're disabled." Soon after, plaintiff learned he had lost his seniority status on or about June 1, 1991, effectively terminating his employment with Wells Fargo.[7]

After learning of his termination, plaintiff contacted defendant regarding the events outlined above. In a letter dated July 17, 1991, defendant informed plaintiff he could either pursue his state handicap discrimination claim by filing a complaint with the MCHR or proceed directly to the courts. Relying on this advice, plaintiff did not file a complaint with the MCHR within the 180 days prescribed by statute. Instead, on August 22, 1991, defendant filed a cause of action on plaintiff's behalf in the Circuit Court of the City of St. Louis, which was later removed to United States District Court for the Eastern District of Missouri. In a March 12, 1991 letter to plaintiff, defendant admitted erroneously advising plaintiff regarding the necessity of filing a complaint with the MCHR before pursuing his claim through the courts. On March 31, 1993, the court entered summary judgment in favor of Wells Fargo on plaintiff's claim due to his failure to file a complaint with the MCHR and his failure to obtain a right to sue letter, which are prerequisites for filing a claim in the courts.[8] The district court's order was affirmed on appeal to the Eighth Circuit Court of Appeals.

Plaintiff thereafter sought other legal counsel and filed this legal malpractice claim against defendant. Plaintiff essentially alleged defendant undertook representation of plaintiff in his handicap discrimination claim, defendant misadvised plaintiff concerning the proper procedure for pursuing such a claim, defendant's advice served to bar plaintiff's pursuit of his claim which would have otherwise been successful, and defendant's advice directly resulted in plaintiff's inability to recover approximately $640,000 in damages for lost wages past and future, as well as an unspecified amount of damages for mental anguish, attorneys fees, and punitive purposes.

---

5. Plaintiff was a member of Local 1, International Brotherhood of Electrical Workers.

6. Plaintiff had seniority over both a new hire as well as any recent hire and therefore, under the terms of the collective bargaining agreement, had a superior right to any new positions within Wells Fargo. As previously stated, plaintiff had been with the company since 1974.

7. The collective bargaining agreement provided that any worker who was absent from work for a continuous period of 12 months lost his or her seniority status.

8. Plaintiff had filed a first amended petition adding another count to his original handicap discrimination claim. The federal district court later entered summary judgment in favor of Wells Fargo on this count as well. Because no issues regarding this count are raised on appeal, no further mention will be made of it.

Defendant filed a motion for summary judgment asserting because plaintiff applied for and received social security benefits, having been found disabled by the SSA, plaintiff "is estopped from claiming that he is 'handicapped' under Chapter 213 of the Revised Statutes of Missouri." The trial court agreed and granted this motion. Plaintiff now appeals.

As an initial point, our review of a summary judgment is essentially *de novo*. *Rosemann v. Roto–Die Co., Inc.*, 947 S.W.2d 507, 511 (Mo.App. E.D.1997). We review the record in the light most favorable to the nonmoving party and grant him all reasonable inferences. *Id.* A summary judgment is proper where the movant demonstrates there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Murray v. Crank*, 945 S.W.2d 28, 30–31 (Mo.App. E.D.1997). When the movant is the defending party, as in the instant case, he may establish he is entitled to summary judgment by showing facts which negate any one element of plaintiff's *prima facie* case. *Id.* at 31.

■ In order to successfully prosecute his legal malpractice claim, plaintiff had to plead and prove four elements: (1) plaintiff and defendant had an existing attorney/client relationship; (2) defendant acted negligently or in breach of a contract; (3) such acts were the proximate cause of plaintiff's damages; and (4) but for defendant's actions, plaintiff would have been successful in the prosecution of his underlying handicap discrimination suit. *See McDowell v. Waldron*, 920 S.W.2d 555, 559 (Mo.App. E.D.1996). In his motion for summary judgment, defendant contended plaintiff was estopped from arguing he was "handicapped" because he had previously been found "disabled" by the SSA. Therefore, defendant argued, plaintiff's claim for handicap discrimination "was doomed to fail," as plaintiff was incapable of proving the fourth element of his legal malpractice claim. The trial court granted defendant's motion through application of the doctrine of collateral estoppel.

■ Collateral estoppel precludes parties from relitigating an issue which has been previously litigated by said parties or those in privity with them. *Tatum v. St. Louis Metro Delivery, Inc.*, 887 S.W.2d 679, 681–82 (Mo.App. E.D.1994). The courts have used the doctrine to estop a party from relitigating an issue which had previously been decided in an administrative proceeding. *See Bresnahan v. May Dept. Stores Co.*, 726 S.W.2d 327, 330 (Mo.banc 1987)(holding plaintiff-employee was collaterally estopped from bringing suit for wrongful discharge against defendant-employer where Labor and Industrial Relations Commission found plaintiff had been discharged for aggravated misconduct). Courts apply a four-part test in determining whether the doctrine may be invoked: (1) was the issue in the prior proceeding identical to the one in present litigation; (2) did the prior adjudication result in a judgment on the merits; (3) is the doctrine being asserted against a person who was a party to the previous litigation or in privity with such a party; and (4) did the party have a full and fair opportunity to litigate the issues previously decided. *Tatum*, 887 S.W.2d at 682. We examine each of these factors in turn.

In order to receive disability benefits from the SSA, plaintiff had to be found unable

> to do any substantial gainful activity by reason of any medically determinable physical or mental impairment.... To meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy.

20 CFR section 404.1505(a). "Substantial gainful activity" is further defined in 20 CFR section 404.1572: it is "work activity that is both substantial and gainful[.]" "Substantial work activity" is "work activity that involves doing significant physical or mental activities." 20 CFR section 404.1572(a). In making its determination, the SSA takes into consideration plaintiff's "residual functional capacity," age, education, and previous work experience. 20 CFR section 404.1505(a). Moreover, the administration has a list of impairments "which are considered severe enough to prevent a person from doing any gainful activity." 20 CFR section 404.1525. Multiple sclerosis is among those impair-

ments listed, as are several of the symptoms which are common to the condition and which plagued plaintiff. *See* 20 CFR section 404, subpt. P, App. 1.

In order to prevail in his underlying handicap discrimination claim, however, plaintiff had to show he was "handicapped" as defined in RSMo section 213.010(10) (1994). In other words, plaintiff had to demonstrate he suffered "a physical or mental impairment which substantially limits one or more of a person's major life activities, a condition perceived as such, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job ... in question." While both questions involve impairments which substantially limit plaintiff's abilities, the fundamental focus of each is different.

■ The determination made by the SSA looks at the general employability of plaintiff in the national economy, based on his impairment, symptoms, past work experience and education. In determining whether plaintiff is handicapped under Missouri law, on the other hand, the court looks at whether plaintiff would have been capable of performing the duties of an operator, a specific position, as that position might be reasonably modified by *Wells Fargo* to accommodate plaintiff's disability. The SSA's analysis does not include consideration of an employer's possible accommodation of the applicant's impairment, which likely serves to severely limit the employability of any impaired person. Moreover, the SSA will presume a disabling impairment if plaintiff had one of a list of enumerated impairments along with certain of its effects. *See Overton v. Reilly,* 977 F.2d 1190, 1196 (7thCir.1992)(stating SSA's finding of disability consistent with claim that disabled person is "qualified" to do his job under Rehabilitation Act where SSA may find disability on basis applicant has met criteria listed without inquiring into his ability to find work and where inquiry into ability to find work is generalized when made).[9] Accordingly, while plaintiff's disability is at issue in both proceedings, the ultimate focus

in each proceeding is fundamentally different. *See American Yearbook v. Labor & Ind. Rel. Com.,* 739 S.W.2d 755, 758 (Mo.App. W.D.1987)(holding plaintiff was not collaterally estopped from litigating whether he was an employee of a subsidiary company where administrative tribunal previously found plaintiff was not an employee of the parent corporation). Therefore, the issue in the SSA proceeding cannot be said to be identical to the issue before the court in the handicap discrimination suit, and the first factor of the doctrine is not satisfied. *See Robinson v. Neodata Services, Inc.,* 94 F.3d 499, 502 n. 2 (8th Cir.1996)(stating social security determinations "are not synonymous" with "qualified person" definition under the Americans with Disabilities Act where plaintiff argued SSA's finding of disability had preclusive effect on that issue under the Act); *see also, Daffron v. McDonnell Douglas Corp.,* 874 S.W.2d 482, 487 (Mo.App. E.D.1994)(finding fact employee applied for social security disability benefits not dispositive of issue of employee's ability to perform job in employee's handicap discrimination suit though employer argued it was akin to an admission of inability).

■ The second factor, whether the prior proceeding resulted in a judgment on the merits, is also important under the facts of this case. This prong considers the finality of the previous judgment. *See Bresnahan,* 726 S.W.2d at 329–30; *Tatum,* 887 S.W.2d at 682. While plaintiff ultimately received a favorable decision from the SSA on his application, his award of disability benefits is subject to review every five to seven years. 20 CFR section 404.1590(d). Moreover, so long as plaintiff receives disability payments, he is obligated to inform the SSA of his ability to perform any substantial and gainful work. 20 CFR section 404.1588. Plaintiff stated in his deposition he did in fact contact the SSA about his desire to return to work, and he acknowledged he was still receiving benefits. It is important to note this is permitted under the Social Security Act: the disability benefits program allows applicants who obtain suitable employment to continue to re-

---

9. In its letter informing plaintiff of his right to receive benefits, the SSA merely stated, "Doctors and other trained staff found that you are disabled under our rules." No further explanation as to why or how plaintiff was found disabled was given.

ceive disability benefits for a "trial period" in order to ensure the applicants are able to perform their duties before terminating their sole source of income. 20 CFR section 1592. If and when plaintiff obtains employment and demonstrates he is capable of maintaining his position despite his impairment, plaintiff will lose his "disabled" status under the SSA's rules, and will consequently lose his disability benefit payments. *See id.* In light of these factors, whether the SSA's decision was a final judgment which plaintiff cannot now collaterally attack is doubtful at best.

With respect to the third factor there is little to dispute. Plaintiff, the party against whom collateral estoppel was asserted, was a party to the SSA determination regarding disability.

■ Lastly, we must examine whether plaintiff had a fair opportunity to litigate the issue before the SSA. In doing so, we are mindful plaintiff received a favorable decision from the administration, but do not believe the outcome alone determines whether the fourth element of the test has been met. In order to apply and receive benefits, plaintiff was required to fill out a form—albeit under the penalty of perjury—which had been designed and dictated wholly by the SSA. The form contemplates that the person ultimately receiving benefits may not be the person who filled out the form. The failure of an applicant to fully complete the form and comply with its requests could result in the delay and loss of benefits. "It is appropriate to consider the nature of a tribunal in determining the estoppel effect of its rulings." *Bank Bldg. & Equip. Corp. v. Director of Rev.*, 687 S.W.2d 168, 171 (Mo.banc 1985)(refusing to give estoppel effect to decisions of State Tax Commission from year to year). We doubt this sort of forum is sufficient to allow a party to fully, and more importantly, to fairly litigate an issue, the determination of which stands to forever bar any subsequent claim concerning a similar issue. Here, we decline

to find plaintiff fully and fairly litigated the issue of his disability, or his ability to perform the duties of an operator, so as to preclude him from litigating the issue at trial.

■ Defendant also raised in his motion for summary judgment the argument plaintiff should be judicially estopped from asserting his ability to perform the functions of an operator where he previously stated he was incapable of performing *"any* type of work" in his SSA application. The doctrine of judicial estoppel embodies the notions of common sense and fair play. *Lillo v. Thee,* 676 S.W.2d 77, 81 (Mo.App. S.D.1984). It holds that a person who states facts under oath during the course of a trial is estopped to deny such facts in a subsequent suit. *Id.* This court has previously declined to apply the doctrine to statements made on state and federal tax forms, despite being signed under penalty of perjury, because they were not made under oath during the course of a trial. *Bellinger v. Boatmen's Nat. Bank,* 779 S.W.2d 647, 651 (Mo.App. E.D.1989). Here, although plaintiff signed the SSA disability report under penalty of perjury, the statements were likewise not made under oath in a judicial proceeding.

Moreover, based on the facts presented, it does not appear plaintiff was attempting to impugn the integrity of the courts. *Edwards v. Durham,* 346 S.W.2d 90, 101 (Mo.1961). Plaintiff suffered from a debilitating disease which left him unable to perform the job he held for almost twenty years. Soon after plaintiff was diagnosed, his physician informed him he was unable to work, and plaintiff applied for disability benefits. Thereafter, due in large part to the fluctuating character of MS, plaintiff recovered to the point where his doctor released him to work with restrictions. Plaintiff attempted to find employment which met the restrictions placed on him.[10] He notified the SSA of his attempts to find employment as required by the administration's rules. Under

---

10. In its brief and at oral argument, defendant asserts plaintiff suffered a broken leg in February of 1991, which would have prevented him from being able to fulfill the operator's position that subsequently opened, because plaintiff wore a cast on his foot and would have been unable to climb the stairs to the office. However, plaintiff testified his broken leg, which was in a removable cast, would not have prevented him from being able to fulfill the position, and further stated other employees wearing leg casts had been allowed to work in the office. This issue on which the parties dispute is one of material fact which must be resolved at trial.

these facts, we do not conclude plaintiff was playing fast and loose with the courts so as to justify the application of judicial estoppel. *See Monterey Development Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 607 (8thCir.1993) (citations omitted).

■ Accordingly, we find neither collateral nor judicial estoppel to be appropriate under the circumstances presented. Plaintiff's application for disability benefits, though not dispositive, is probative evidence for the jury to weigh if plaintiff's claim results in a trial. *See Daffron*, 874 S.W.2d at 487. Based on the foregoing, the judgment of the trial court is reversed and the case remanded.

GRIMM, P.J., dissents.

PUDLOWSKI, J., concurs with writer.

Before CRANE, P.J., and RHODES RUSSELL and JAMES R. DOWD, JJ.