Ryan Lyle PARNELL, a minor, b/n/f Debra G. Parnell and Debra G. Parnell, Individually, Appellants

v.

Robert SHERMAN, Respondent.

No. 19675.

Missouri Court of Appeals, Southern District, Division Two.

May 18, 1995.

David L. Colson, Farmington, for appellants.

John L. Woodward, Woodward & Associates, P.C., Cuba, for respondent.

PARRISH, Judge.

Debra G. Parnell (Debra) appeals a judgment that, among other things, set aside a quitclaim deed to real estate in Crawford County, Missouri, and awarded Robert Sherman (Robert) judgment in the amount of $25,000 secured by a lien on the real estate.[1] She contends certain findings of fact made by the trial court are not supported by substantial evidence and are against the weight of the evidence. This court affirms in part, reverses in part and remands the case to the trial court.

■■■ The trial court heard this case without a jury. As such, in assessing challenges to the trial court's findings of fact, this court defers to the trial court's superior ability to judge the credibility of witnesses. *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991); Rule 73.01(c)(2). This court accepts the evidence and permissible inferences that are consistent with the trial court's findings and disregards contradictory evidence. *Luna v. Smith*, 861 S.W.2d 775, 780 (Mo.App.1993). The judgment must be affirmed unless it is not supported by substantial evidence, is against the weight of the

evidence, or declares or applies the law erroneously. *Humphrey v. Sisk*, 890 S.W.2d 18, 20 (Mo.App.1994).

Debra and Robert began dating in 1990. They had a child, Ryan Lyle Parnell, born in 1991. In August 1991, Debra purchased a house, the "Montgomery property," in Bourbon, Missouri, in Crawford County. The purchase price was $25,000. Title was conveyed by warranty deed.

Debra obtained the funds required to purchase the Montgomery property from two loans. She obtained a loan from Leo Shockley and Barbara Shockley in the amount of $15,000, and a loan from Robert in the amount of $10,000. The Shockley loan was evidenced by a promissory note that bore interest at the rate of 10% per annum. The loan was for a term of four years, payable in monthly installments of $227.61. Both Debra and Robert signed the promissory note. It was secured by a deed of trust on the Montgomery property executed by "Debra G. Parnell, a single person."

Debra's loan from Robert was evidenced by a promissory note dated June 19, 1991. It was secured by a second deed of trust. The deed of trust that secures the note recites its date and that the principal amount is "due on or before eight (8) years from date, with interest from date on the unpaid principal balance at the rate of 6% per annum." Nothing in the record before this court states when interest is payable.

The warranty deed to Debra, the promissory notes to the Shockleys and to Robert, and the accompanying deeds of trust were each dated June 19, 1991. The warranty deed and the two deeds of trust were recorded the same date.

Debra also signed a quitclaim deed to the Montgomery property to Robert as grantee[2].

---

1. Debra filed a three-count petition. Count I was an action Debra brought as next friend for Ryan Lyle Parnell and individually seeking declaration that Robert is the father of Ryan. Count II was an action for support for Ryan. The trial court declared that Robert is the father of Ryan and ordered Robert to pay support for Ryan to Debra. The parts of the judgment that address the issues in Counts I and II are not appealed.

2. Although Robert is not named as a grantor and is named as sole grantee in the quitclaim deed, he also executed it. The notary's acknowledgement on the quitclaim deed states, "On this 19th day of June, 1991, before me Elizabeth Wynn (name of notary), a Notary Public in and for said state, personally appeared *Debra G. Parnell* and *Robert H. Sherman* (name of individual) known to me to be the persons who executed the foregoing instrument and acknowledged to me that

It was dated June 19, 1991. Robert recorded the quitclaim deed April 2, 1992, after he became disenchanted with his personal relationship with Debra. In Count III of her petition, Debra requested the trial court to set aside the quitclaim deed from her to Robert dated June 19, 1991, and award her damages "for the loss of said real estate."

Robert later secured a loan in the amount of $25,000 from Citizens Bank of New Haven, Missouri (Citizens Bank). He executed a promissory note to the bank. It was secured by a deed of trust on the Montgomery property signed by Robert.

Robert's promissory note and deed of trust to Citizens Bank were dated September 2, 1992. The deed of trust was recorded September 3, 1992. A deed of release dated August 31, 1992, acknowledging payment of the promissory note secured by the deed of trust Debra gave to Leo Shockley and Barbara Shockley was recorded September 3, 1992.

The trial court found that Robert had assisted in negotiating the sale of the Montgomery property to Debra and arranging financing; that the quitclaim deed from Debra to Robert "was improperly recorded" and should be set aside. It found that on September 2, 1992, Robert obtained a loan from Citizens Bank in the amount of $25,000 and used the proceeds of that loan to pay the Shockley note and that the proceeds of the loan also "paid and satisfied the note from [Debra] to [Robert]."

Judgment was entered, with respect to Count III, setting aside the quitclaim deed from Debra to Robert and declaring that Robert "has no right, title and interest" in the Montgomery property. The judgment further ordered Debra to pay Robert "the sum of TWENTY FIVE THOUSAND DOLLARS ($25,000.00), together with interest at the rate of 7.95% per annum from and after September 2, 1992, until said amount is paid in full." The judgment imposed a lien on the

Montgomery property for that amount. It directed, "The payments ... shall be made within 90 days." Costs were taxed to Robert.

Debra presents three points on appeal, all directed to particular findings of the trial court and their applicability to concomitant conclusions of law. The first is directed to the trial court's finding that payments made to the Shockleys were made by money provided by Robert. The second contests the finding that Debra's $10,000 promissory note executed at the time she purchased the Montgomery property was "satisfied" by the loan he secured from Citizens Bank. The third contends the trial court erred in imposing a lien on the Montgomery property for the $25,000 Debra was ordered to pay Robert.

■ Point I is directed to the trial court's finding "[t]hat the payments made by DEBRA G. PARNELL on the note to SHOCKLEYS was from monies provided by ROBERT SHERMAN." Debra contends the finding is erroneous "because the judgment was not supported by substantial evidence and is against the weight of the evidence because the payments were made by Debra Parnell."

Robert testified that he and Debra lived together at the Montgomery property for a period of time after Debra bought the property; that during that time and after he moved out, he paid the $227.61 monthly payments to the Shockleys. He testified that Debra's step-father and brother, Frank Keough and Mike Parnell, lived in the upstairs part of the property part of the time; that they paid rent in the amount of $200 per month for eight months from July 1991 until April 1992.

Debra testified that her step-father and brother did not pay rent during the time they lived in her house; that she gave the money for each month's payment to Robert; that Robert would then write a check for the

they (he, she) executed the same for the purposes therein stated. And the said Debra G. Parnell and Robert H. Sherman further declared themselves to be single and unmarried."

Elizabeth Wynn testified that she was not present in the room where the closing took place and

did not see the quitclaim deed signed. She testified that the quitclaim deed was presented to her for her signature and seal immediately after the closing of the sale of the Montgomery property to Debra. She saw Debra in the office the date of the closing.

payment and gave it to her to send to the Shockleys. She contends, "And he would write the check out to Leo Shockley, which I would then put it in an envelope and mail to Shockleys."

According to Debra, Frank Keough and Mike Parnell paid utilities for their part of the house, water and electricity charges. She testified that she paid the monthly payments from AFDC payments of $431 per month that she received.

Debra contends she made the house payments that were due through March 1992. After that date, she attempted to pay the Shockleys by mail. They returned her payment.

The source of the funds for the payments from July 1991 to April 1992 was an issue for determination by the trial court. The trial judge believed the testimony of Robert in finding that he provided the funds with which the payments were made to the Shockleys. This court defers to the trial court's determination. Rule 73.01(c)(2).

■ Robert testified, however, that eight rental payments of $200 each were received from Frank Keough and Mike Parnell; that those amounts were included in the funds he used to pay the Shockleys. The trial court, by setting aside the quitclaim deed from Debra to Robert, concluded that Debra, not Robert, owned the Montgomery property. The right to receive income from real property is an incident of ownership. *McDonald v. McDonald,* 150 Colo. 492, 374 P.2d 690, 691 (1962); *Cobb v. Hoskins,* 554 S.W.2d 886, 888 (Ky.App.1977). That amount of the payments made to the Shockleys was provided by Debra. The trial court erred in considering the $1,600 rental income as money provided by Robert. As to that amount, Point I is well-taken. Debra is entitled to credit for $1,600 on any indebtedness she may owe Robert.

■ Point II is directed to the trial court's finding:

On September 2, 1992, ROBERT SHERMAN negotiated a loan with Citizens Bank of New Haven, in the amount of TWENTY–FIVE THOUSAND DOLLARS ($25,000) and at an interest rate of 7.95%. ROBERT SHERMAN used the proceeds of said loan to pay the Shockley note. The Court also finds that said proceeds paid and satisfied the note from PARNELL to SHERMAN.

Debra contends the trial court erred in finding that the loan proceeds constituted payment of Debra's $10,000 promissory note to Robert which was not yet due.

Robert testified that he did not know where the $10,000 promissory note was. He acknowledged it was not payable for eight years; that it provided for interest at the rate of 6%. He had not seen it since September 1992. The loan Robert acquired from Citizens Bank was arranged by him. There is no evidence that Debra was involved in the transaction nor that she agreed to its proceeds being used to pay her promissory note to Robert.

■ Payment requires action of both the debtor and creditor. *Mercantile–Commerce Bank & Trust Co. v. Meletio,* 84 S.W.2d 655, 659 (Mo.App.1935). A payment requires delivery by the debtor and acceptance by the creditor, both with a common purpose. *Id., citing Thompson v. Kellogg,* 23 Mo. 281, 285 (1856). Debra took no action to pay the promissory note. The evidence before the trial court was that the promissory note was dated June 19, 1991; that it was "due on or before eight (8) years from date." No claim was made that it was in default.

Point II is granted. The trial court erred in holding that the Citizens Bank loan proceeds constituted payment of Debra's $10,000 promissory note. The trial court erred in including the $10,000 attributable to the note in the judgment entered in favor of Robert.

■ Point III contends the trial court erred in making the finding that the judgment awarded Robert constituted a lien on the Montgomery property and that "payments ... shall be made within 90 days of the date of [the] decree."

As determined with respect to Points I and II, the amount of the judgment awarded Robert is erroneous. The record is silent as to a basis for imposition of a lien on the Montgomery property other than that which occurs by operation of law upon entry of a money judgment. *See* § 511.350, RSMo 1986. It is likewise silent as to a basis for imposing a 90–day payment requirement.

Robert was not a direct beneficiary of the value obtained from the loan from the Shockleys. He signed the note to enable Debra to secure financing so she could buy the Montgomery property. He was liable as an accommodation party. *See* § 400.3–415, RSMo 1986. His right of recourse against Debra is dependent on his establishing payment of the Shockley promissory note in his capacity as accommodation party.[3]

Contrary to Robert's assertion, the trial court did not undertake to impose a resulting trust in his favor. The judgment does not so state. Furthermore, it is uncontroverted but that Robert's only claim to an interest in the real estate is derived from the $10,000 loan used as part of the purchase price Debra paid for the Montgomery property. "'A loan is wholly inconsistent with the theory of a resulting trust.'" *Duncan v. Rayfield,* 698 S.W.2d 876, 880 (Mo.App.1985), *quoting Ellis v. Williams,* 312 S.W.2d 97, 103 (Mo.1958). Likewise, Robert's assertion that he was assigned the Shockley promissory note is not supported by the record on appeal. There is no evidence of assignment. Point III is granted.

The part of the judgment as to Count III that sets aside the quitclaim deed from Debra to Robert and the part that restrains Robert from evicting Debra from the Montgomery real estate is affirmed. In all other respects, the part of the judgment as to Count III is reversed. The case is remanded. The trial court is directed to enter judgment on Count III for Robert in such amount as is consistent with this opinion. Whether additional evidence is required is left to that court's discretion. In all other respects the judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.

---

**3.** This court found nothing in the record explaining why Robert paid the note to the Shockleys before it was due. On remand the trial court should determine whether, other than as to amounts of any monthly installments that were due before the Shockley note was paid, Robert's payment of that note was made as a volunteer. *See Commercial Union Ins. Co. v. Farmers Mut. Fire Ins. Co.,* 457 S.W.2d 224, 226 (Mo.App. 1970).