**Donald BORGSCHULTE and Sandra Borgschulte, Plaintiffs–Respondents,**

v.

**Charles BONNOT and Joneane Bonnot, Defendants–Appellants.**

No. SD 28963.

Missouri Court of Appeals,
Southern District,
Division Two.

March 12, 2009.

James A. Rynard, The Rynard Law Firm, Kimberling City, for Appellants.

John Cowherd, Mt. Vernon, for Respondents.

JOHN E. PARRISH, Judge.

Charles Bonnot and Joneane Bonnot (collectively referred to as defendants) appeal a judgment for Donald Borgschulte and Sandra Borgschulte (collectively referred to as plaintiffs) for fraudulent misrepresentation.[1] Judgment was entered for plaintiffs and against defendants for $27,633.81, representing damages in the amount of $15,360 and attorney fees of $12,273.81. This court affirms in part, reverses in part, and remands with directions.

This case was tried by the circuit court without a jury. As such this court's review is pursuant to Rule 84.13(d).

The judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence or erroneously declares or applies the law.

*Parnell v. Sherman,* 899 S.W.2d 900, 901 (Mo.App.1995). This court defers to the trial court's superior ability to judge the credibility of witnesses. *Id.* Evidence and permissible inferences consistent with the findings of the trial court are accepted and contradictory evidence disregarded. *Id.*

*Artilla Cove Resort, Inc. v. Hartley,* 72 S.W.3d 291, 293 (Mo.App.2002).

Plaintiffs purchased certain property adjacent to Table Rock Lake from defendants in 2004. They used the property on weekends during the remainder of that year. Mr. Borgschulte's mother and stepfather moved into the residence on the property in January 2005. In March 2005, Mr. Borgschulte's stepfather told him that when he mowed the grass on the property, there were wet spots where the lawnmower wheels would sink into the ground. Mr. Borgschulte looked at the area. He explained, "[I]t was soggy and had several bad spots." There was a garden area where Mr. Borgschulte observed that "you would literally sink down in the mulch." The problem worsened, after which Mr. Borgschulte contacted Mr. Bonnot and inquired if he had ever experienced problems with the septic system. Mr. Bonnot said he had not.

Mr. Borgschulte contacted Sean Hill at Hill & Hill Maintenance and Excavating ("Hill & Hill"). Mr. Hill visited the property and observed sewage seeping out of the ground that he told the court "smelled horrible." Plaintiffs contracted with Hill & Hill to replace the septic system. Mr. Hill explained:

The type of system we put in is—is labeled as an alternative or advanced

---

1. Plaintiffs' first amended petition was in three counts. Counts I and II were against both defendants. Count I was for breach of contract. Count II was for fraudulent misrepresentation Count III was against defendant Charles Bonnot for negligent misrepresentation. The trial court entered judgment for plaintiffs on Count II and found for defendants on Counts I and III.

system. There's several different reasons for putting in a system like that: [s]hallow depth to bedrock, a tight, confined space where you don't have very—very much square footage to work with, your soils are—are no good; they've—they've been overloaded.

The cost was $15,360. Additional facts are included in the discussion that follows with respect to defendants' points on appeal.

■ Defendants assert seven points on appeal. Points I through VI are directed to the proof of elements required to maintain an action for fraudulent misrepresentation, the cause of action in which the trial court found for plaintiffs. Point VII is directed to the trial court's award of attorney fees to plaintiffs.

The elements of a claim of fraudulent misrepresentation are: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of the truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury. *Dierker Associates v. Gillis,* 859 S.W.2d 737, 746–47[22] (Mo. App. E.D.1993). A failure to establish any one of these elements with substantial evidence is fatal to recovery. *Scott [v. Car City Motor Co., Inc.],* 847 S.W.2d [861] at 864 [ (Mo.App.1992) ].

*Thoroughbred Ford, Inc. v. Ford Motor Co.,* 908 S.W.2d 719, 731 (Mo.App.1995).

Point I is directed to the requirement that there must have been a false, material representation by defendants. Defendants contend there was not "substantial evidence of the 'falsity' element."

■ Defendants completed a "Seller's Disclosure Statement" when the property was listed for sale. It indicated there were no problems with the septic system or the soil at the property. Defendants wrote "no" in response to the question on the form that asked if there were any known problems or repairs regarding the "Septic Tanks/Laterals/Drain Fields." Defendants further checked the "no" box in response to the question, "Are you aware of any other environmental concerns such as discoloration of soil or vegetation or oil sheens in wet areas." A final item on the form states, "Please state any other facts or information (favorable or unfavorable) relating to this property that would be of concern to a buyer." No statement was made on lines that were provided for that purpose.

Plaintiffs called David Casaletto as a witness. Mr. Casaletto was executive director of Table Rock Lake Water Quality (TRLWQ), a not-for-profit corporation that dealt with problems of effluent from septic systems running into Table Rock Lake. Mr. Casaletto had been called by Mr. Bonnot to check the possibility of improving the septic system at the property that was later sold to plaintiffs. Mr. Casaletto was asked the following questions and gave the following answers.

Q. When you were there, did you observe any problems with the leach field or the lateral fields?

A. Really, what I can say is we observed what—what was written on the application: Soggy conditions, and—

Q. I think the application indicated some smells, black soil. Did you see any of that—

A. Saw a little black soil.

Q. —did you detect any of that?

A. I don't—I don't personally today recall smelling a bad smell, but—but we

were—I remember seeing the soggy conditions.

After Mr. Casaletto's inspection of the property, he contacted Mr. Bonnot and asked if Mr. Bonnot wanted to proceed with determining what type of system should be installed to alleviate the problem. Bonnot told Casaletto that he wished to do so. Thereafter, at a meeting of its board of directors, TRLWQ agreed to do the project at defendants' property so long as similar work would be done at two new houses Bonnot was building.

Bonnot wanted the work to be done first at the two new houses he was building. He was building them to sell. Systems were installed at the new houses. No system was installed at the property that was later sold to plaintiffs. When TRLWQ contacted Bonnot about the property that Casaletto had inspected, they learned that defendants no longer lived at the property; that the property had been sold. The new owner was not contacted.

Although Charles Bonnot did not have TRLWQ do the work that would have alleviated the problem with the septic system, he contacted Joe Farley Excavation and Septic Installing ("Farley") about the problem. Mr. Bonnot told the trial court that Farley recommended adding topsoil in the area of the drainage field. Bonnot had this done "to take care of the problem with the soggy soil or discolored soil or smells." Bonnot said this was not a repair; that "[i]t was for a garden and to get rid of the soggy soil." This was not disclosed to plaintiffs prior to purchasing the property.

■ The failure of defendants to disclose the circumstances that led Charles Bonnot to seek assistance from TRLWQ, and the failure of defendants to disclose that the area over the septic system had been covered with dirt, provided sufficient bases for the trial court to conclude that defendants made false, material represen-

tations to plaintiffs. "Silence or concealment of facts can amount to misrepresentation and serve as a substitute element for a false and fraudulent misrepresentation if the silent party has a duty to speak." *Keefhaver v. Kimbrell*, 58 S.W.3d 54, 59 (Mo.App.2001). *See also Barylski v. Andrews*, 439 S.W.2d 536, 540 (Mo.App. 1969) (actions to cover up a defect without disclosure can constitute a false misrepresentation).

Defendants rely on *Blanke v. Hendrickson*, 944 S.W.2d 943 (Mo.App.1997), as support for their claim that covering the area where they had observed moisture and foul smells was sufficient to constitute a repair of the area so that the failure to discuss those problems was not a misrepresentation. The reliance on *Blanke* is misplaced. In *Blanke*, significant repairs were made to a basement that, years before, had minimal evidence of water seepage in what were characterized as typical basement cracks. After addressing the water seepage, the property owner made substantial improvements with paneling and carpeting to create a basement room. No problem was experienced over a substantial period after the work was completed and before the property was sold. The property owner disclosed that there was a problem prior to when he improved the property, but that the problem had been fixed. *Blanke* held that although the basement eventually developed a leak after the sale, the disclosure that there had been a problem that was repaired was sufficient; that there had not been a misrepresentation.

Defendants' actions were unlike those in *Blanke*. Defendants' actions are more akin to what occurred in *Artilla Cove Resort, Inc. v. Hartley, supra*, where a bulging concrete block foundation wall had been covered with non-load bearing ply-

wood, although the property was represented as being in good condition. *Artilla* held that the nondisclosure of the bulging wall and its cover-up was a false representation. In this case, as in *Artilla*, there was sufficient evidence for the trial court to find that defendants made false representations by not disclosing the condition of the septic system in the Seller's Disclosure Statement. Point I is denied.

■ Point II argues that the trial court erred in finding for plaintiffs in that "[plaintiffs'] proof did not show substantial evidence of the 'knowledge of falsity' element." Defendants sought help from TRLWQ to repair the defective septic system that produced wet spots, black dirt, and foul odors. Notwithstanding that repairs of defendants' other properties were completed, defendants did not go forward with the repairs of the property that they sold plaintiffs. Instead of repairing the defective system, they covered it with dirt so that the wet spots and odor would no longer appear to one looking at the area in which the septic system was located. There was sufficient evidence for the trial court to find that defendants had knowledge that the non-representations of any problems with the septic system were false. Point II is denied.

■ Point III asserts trial court error in finding for plaintiffs for the reason that "[plaintiffs'] proof did not show substantial evidence of the 'speaker's intent that [sic] statement be *acted upon*' element." Defendants point to a provision of the real estate contract and specific language in the Seller's Disclosure Statement as support for their claim that they did not intend plaintiffs to rely on the lack of disclosures that form the basis for plaintiffs' fraudulent misrepresentation claim. The element of the cause of action for fraudulent misrepresentation to which Point III is directed is the requirement that the one

communicating the information to which the claim of fraud is directed must have intended the "hearer" to act upon that information.

The first paragraph of the Seller's Disclosure Statement provides:

> The following is a disclosure statement, made by Seller concerning the condition of the property commonly described as *282 Redwing Dr.* This disclosure is not a warranty of any kind by Seller or any agent of Seller in this transaction, and is not a substitute for any inspection or warranties the buyer may wish to obtain.

The disclosure statement concludes with the following paragraph:

> Buyer is urged to carefully inspect the property and, if desired, to have the property inspected by an expert. Buyer understands that there are areas of the property of which Seller has no knowledge and that this disclosure statement does not encompass those areas. Buyer also acknowledges that he has read and received a signed copy of this statement from Seller or the listing broker.

Paragraph 19A of the parties' sales contract provides:

> Buyer confirms that before signing this offer to purchase, Buyer has received the Seller's Disclosure Statement completed for this Property. The Seller's Disclosure Statement is not a substitute for any inspection that Buyer may wish to obtain. Buyer is advised to address any concerns Buyer may have about information in the Seller's Disclosure Statement by use of conditions to performance under this Contract.

■ A seller who has lived in a house can be expected to have knowledge about the property superior to a buyer's knowledge. *Keeflaver*, 58 S.W.3d at 60. Defendants lived in the house on the property

prior to selling it to plaintiffs. Their duty to speak arose from the superior knowledge they had regarding the property. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 767 (Mo.banc 2007). Defendants' Seller's Disclosure Statement did not identify the leaching problem regarding the septic system, although there was evidence that defendants knew of the problem, had discussed replacing their system to alleviate it, and, finally, had simply placed dirt over the location and put a garden in the area where they had placed the new dirt. Defendants did not include this information in the Seller's Disclosure Statement which was provided plaintiffs prior to the execution of the sales contract. Plaintiffs reviewed the Seller's Disclosure Statement prior to executing the sale's contract. Plaintiffs believed that defendants' statement regarding the property was truthful. Mr. Borgschulte testified that he relied on the statement that defendants provided. After receiving the statement and reviewing it, plaintiffs signed the sales contract.

As defendants point out, plaintiffs had the right to have the property inspected, which they did. The inspection disclosed that the septic pump at the property was broken and that the septic tank was above normal levels or overflowing. Defendants were required to fix those problems prior to closing. Plaintiffs did not discover, nor did the reasonable inspection they had performed reveal, the other deficiencies in the septic system.

> "Missouri law … holds that a party may not, by disclaimer or otherwise, contractually exclude liability for fraud in inducing that contract." *Lollar v. A.O. Smith Harvestore Prods., Inc.*, 795 S.W.2d 441, 448 (Mo.App. W.D. 1990).... [A seller's] duty to speak [arises] from its superior knowledge prior to the execution of this contract. The presence of a clause disclaiming warran-

ties in a contract does not negate a pre-contractual duty to speak. *See Artilla Cove Resort, Inc. v. Hartley,* 72 S.W.3d 291, 299 (Mo.App. S.D.2002) (holding that real estate contract specifying the seller was making no representations regarding the condition of the property "did not relieve defendants of the duty to disclose" known material facts that were "not … within the fair and reasonable reach of the [buyers]"); *see also Wagner v. Uffman,* 885 S.W.2d 783, 786 (Mo.App. E.D.1994) ("A party may not contractually exclude oneself from fraud through the use of general disclaimers.").

*Hess,* 220 S.W.3d at 767.

Defendants' Seller's Disclosure Statement was prepared and delivered to plaintiffs prior to the execution of the contract. The trial court had sufficient evidence to conclude that defendants intended for plaintiffs to rely on the representations stated. The matters on which plaintiffs based their action for fraudulent misrepresentation were not clearly discernable by inspection. However, they were known to defendants as evidenced by defendants having placed dirt over the problem area and utilizing it as a garden. The language in the sales contract does not excuse defendants' failure to disclose the condition of the septic system and problems they had experienced with it, information that was material to the sale of the property. Point III is denied.

Point IV contends the trial court erred in finding for plaintiffs because "[plaintiffs'] proof did not show substantial evidence of the 'hearer's ignorance of the falsity' element." This assertion is directed to the requirement that the "hearer," in this case plaintiffs, were ignorant with respect to the falsity of defendants' representation.

■ The discussion in Point III is apropos to Point IV. Defendants, as sellers,

had knowledge of the condition of the property. Plaintiffs, as buyers, were not on equal footing with defendants due to the knowledge defendants had acquired by living on the property. Defendants had used the property as their primary residence for more than three years. They knew the septic system did not function as it should during certain times of the year. Defendants covered soggy and discolored soil above the septic system with top soil and planted a garden over the area. The problems with the septic system and leach field were not ascertainable by plaintiffs absent removal of the garden and inspection of the area that lay below where the new soil had been placed. The evidence was sufficient for the trial court to find that plaintiffs were ignorant of the falsity of defendants' representation that the septic system did not need repair. Point IV is denied.

■ Points V and VI are directed to requirements that the "hearer" relied on the truthfulness of the misrepresentation and that they had a right to rely on the misrepresentation. Defendants contend that the trial court erred in finding each of those elements; that plaintiffs failed to present substantial evidence that they relied on the representation (Point V) and failed to present substantial evidence that plaintiffs had the right to rely on defendants' representations (Point VI).

Defendants, having lived on the property for more than three years, had superior knowledge to that of plaintiffs with respect to the septic system's condition and with respect to any repairs that had been made or needed to be made. As such, plaintiffs had a right to rely on the defendants' representations with respect to the condition of the septic system. Mr. Borgschulte testified that he relied on the statements in the Seller's Disclosure Statement, Plaintiffs' Exhibit No. 84. The fact that plaintiffs had an independent inspection of the property, as permitted by the sales contract, did not negate that right. Plaintiffs were deceived by defendants' representations. *See Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 691 (Mo.App.1994). Points V and VI are denied.

■ Defendants' final point, Point VII, is directed to the award of attorney fees. Litigants are generally required to bear the expense of their own attorney fees. Exceptions occur (1) when fees are authorized by contract or statute; (2) when fees are incurred by reason of collateral litigation; or (3) when a court of equity finds an award of attorney fees necessary to "balance benefits." *Memco, Inc. v. Chronister*, 27 S.W.3d 871, 877 (Mo.App. 2000). The action in which plaintiffs prevailed did not involve collateral litigation for which attorney fees might have been awarded, nor was it an action in equity. Although the sales contract provided for attorney fees for a prevailing party upon default on the contract, that was not the basis on which plaintiffs prevailed. Plaintiffs prevailed on their tort action for fraudulent misrepresentation, not on their contract action. Point VII is granted. The award of attorney fees is reversed.

The judgment is reversed as to the award of attorney fees. In all other respects the judgment is affirmed.[2] The case is remanded with directions to the trial court to enter judgment consistent with this opinion.

LYNCH, C.J., and BURRELL, P.J., concur.

---

**2.** Plaintiffs filed a motion in this court, which was taken with the case, seeking the award of attorney fees for this appeal. That motion is denied.