

# Missouri Court of Appeals

## Southern District

### Division Two

AEFC, INC., )
)
    Plaintiff-Respondent, )
)
v. )    No. SD36137
)    Filed:  December 16, 2020
TAMMY D. VIETTI, Individually, and )
VIETTI ENTERPRISES, LLC, )
)
    Defendants-Appellants. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Circuit Judge

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS

A jury found in favor of plaintiff AEFC, Inc. (AEFC) on its common law fraud theory of recovery against defendants Vietti Enterprises, LLC and its member and president, Tammy Vietti (hereinafter referred to collectively as Vietti and individually as Vietti Enterprises or Tammy Vietti).  The jury awarded AEFC $106,626.61 in actual damages.  Thereafter, AEFC filed a motion requesting an award of $350,708 as "contractual attorney's fees," which the trial court granted.  The court entered an amended

judgment that increased AEFC's actual damages by the amount of the attorney fees awarded.

On appeal, Vietti presents three points challenging the award of attorney fees. Point 1, which is dispositive, contends the trial court misapplied the law in granting AEFC's motion for contractual attorney fees because: (1) the jury found in favor of AEFC only on its common law fraud theory of recovery; and (2) pursuant to the American Rule, AEFC was not entitled to recover attorney fees on that tort theory. We agree. Therefore, we reverse the trial court's award of attorney fees. In all other respects, the judgment is affirmed. The cause is remanded with directions to the trial court to enter an amended judgment consistent with this opinion.

The following facts are relevant to Vietti's first point on appeal. AEFC is the national franchisor for the "Adam & Eve" retail brand, which it bills as the "market leader in lingerie and adult themed novelty products in the United States." AEFC's purpose is to enter into franchise agreements with individuals and companies across the country, whereby AEFC is paid money in exchange for the use of its franchise, including the exclusive use of its products and marketing.

In July 2007, AEFC entered into a franchise agreement (Franchise Agreement) with Vietti Enterprises, whereby that LLC would operate a retail "Adam & Eve" store on Republic Road in Springfield, Missouri. The Franchise Agreement was originally set to run from July 19, 2007 to July 18, 2017. It imposed various covenants and conditions upon each party, including that Vietti Enterprises was required to pay 5% of its gross sales per month to AEFC as a royalty fee. As relevant to this appeal, the Franchise Agreement contained the following language pertinent to the issue of attorney fees in section 25.10:

2

> Cost of Enforcement. Franchisee [Vietti Enterprises] shall pay all expenses, including attorneys' fees and costs, incurred by the Company [AEFC], its affiliates, and its successors and assigns (a) to remedy any defaults of, or enforce any rights under, this [Franchise] Agreement; (2) to effect termination of this Agreement; and (3) to collect any amounts due under this Agreement.

Attached to the Franchise Agreement was a personal guarantee document signed by Tammy Vietti (hereinafter referred to as Personal Guarantee). The third paragraph of this Personal Guarantee contained the following language pertinent to the issue of attorney fees:

> The undersigned [Tammy Vietti] hereby agree[s] to defend, indemnify, and hold the Company [AEFC] harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorneys' fees, reasonable costs of investigation, court costs, and arbitration fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee [Vietti Enterprises] to perform any obligation of Franchisee under the [Franchise] Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

Vietti operated its Adam & Eve retail store under the terms of the Franchise Agreement through May 2013, at which time the working relationship between AEFC and Vietti had completely deteriorated. On May 30, 2013, Vietti ceased operations of the store under the Adam & Eve name. That same day, the parties executed a written document (Settlement Agreement) resolving their dispute. Pursuant to the terms of the Settlement Agreement: (1) Vietti paid AEFC a total of $22,271; (2) any amounts alleged due and owing by Vietti to AEFC were deemed satisfied; (3) Vietti agreed to a non-compete provision for a period of two years; and (4) the Franchise Agreement was "terminated and cancelled effective as of the date of the execution of this Agreement by all Parties [May 30, 2013] and is no longer of any force or effect." Paragraph 18 of the Settlement

3

Agreement stated: "All Parties to this Agreement will bear their own costs and attorneys' fees related to this Agreement."

On June 1, 2013, "In the Garden of Eden, LLC," owned by Tammy Vietti's husband, began operating a new store at the Republic Road location in Springfield. The new store operated under the name "In the Garden of Eden." According to AEFC, the "In the Garden of Eden" store was "substantially similar to an Adam & Eve store, and sells products that are substantially similar to products offered by an Adam & Eve store."

In March 2014, AEFC filed suit against Vietti.[1] In a third amended petition, AEFC asserted six theories of recovery against Vietti. Count 1 asserted a common law fraud theory and was based upon allegations that Vietti had fraudulently induced AEFC "to end the franchise relationship and sign the Settlement Agreement" with false representations. The remedies sought in Count 1 included rescission of the Settlement Agreement, as well as actual and punitive damages. In the alternative, AEFC also asserted the following theories of recovery: civil conspiracy to defraud (Count 2); breach of contract based upon the Franchise Agreement (Count 3); breach of the Personal Guarantee attached to the Franchise Agreement (Count 4); and breach of the confidentiality and non-compete provisions of the Franchise Agreement (Count 5). Finally, AEFC asserted in Count 6 a breach of contract theory based upon the Settlement Agreement and sought liquidated damages of $10,000, as provided therein.

---

[1] AEFC later filed a motion to add additional parties, including Tammy Vietti's husband, Gregory Vietti, and In the Garden of Eden, LLC. Gregory Vietti settled with AEFC, and In the Garden of Eden, LLC was voluntarily dismissed as a party by AEFC, leaving only Tammy Vietti and Vietti Enterprises in the case.

Prior to trial, AEFC filed a motion in limine. The motion stated that, "if the jury returns a verdict in AEFC's favor on either of the breach of contract claims, the respective contracts call for an award of attorney's fees. AEFC requests that the award of fees be postponed until post-verdict and handled by the Court directly."

In March 2019, a jury trial was held. Before the trial began, the trial court referred to an unrecorded pretrial conference at which the court ruled on "a variety of motions in limine … filed by each party." At trial, AEFC abandoned its request for rescission of the Settlement Agreement that had been pled in Count 1, as well as the theories of recovery in Counts 2-5. That included the breach of contract theories involving the Franchise Agreement and its attached Personal Guarantee. During AEFC's case-in-chief, it only presented evidence on: (1) its Count 1 common law fraud theory, which sought actual and punitive damages; and (2) its Count 6 breach of contract theory based on the Settlement Agreement. At the close of AEFC's evidence, the trial court noted that AEFC "closed its case without presenting any evidence of attorney's fees." The court then questioned the parties' attorneys:

> THE COURT: …. Attorney's fees was discussed at our pretrial conference as being a potential element of damage in this case. I intended that we would put that on the record sometime earlier, and we didn't do that. Do you all have the agreement that – depending on the outcome of the case – if attorney fees are appropriate, that you will submit evidence of that post verdict with the expectation the Court will consider that award separately from the jury?
>
> [AEFC's attorney]: That was what plaintiff proceeded its case, based on our pretrial proceedings, and intends to do *should they become applicable under a contractual theory.*
>
> [Vietti's attorney]: Yes, Your Honor, I believe we contemplated that that was a matter within the special purview of the Court, that we decided post-verdict.

THE COURT: As long as you both agree on it, that's fine. Otherwise, I would have to deal with the possibility to reopen the case. That is resolved.

(Italics added.)

AEFC's common law fraud theory of recovery was submitted via Instructions 6-11 and Verdict Form A. This verdict form told the jury to stop if it found for AEFC and awarded damages to it. The breach of contract theory of recovery based upon the Settlement Agreement was submitted via Instructions 12-14 and Verdict Form B.

The jury found in favor of AEFC on its common law fraud theory of recovery. On Verdict Form A, the jury awarded actual damages in the amount of $106,626.61 and zero punitive damages. The jury stopped as instructed and returned no verdict on the alternative theory for breach of the Settlement Agreement in Verdict Form B.

After the court accepted the jury's verdict, but before final judgment was entered, AEFC filed a "Motion for Contractual Attorney's Fees" in the amount of $350,708. The premise for the motion was that AEFC was entitled to contractual attorney fees pursuant to provisions in the Franchise Agreement and the Personal Guarantee. Vietti opposed the motion, arguing that the American Rule made each party responsible for their own attorney fees.

After a hearing on the matter, the trial court entered an order granting the motion for the following reason:

> [AEFC] made a claim for additional damages for attorney fees under the Franchise Agreement. The parties agreed pre-trial to a procedure whereby the issue of [AEFC's] entitlement to attorney's fees, and the amount of those fees would not be submitted to the jury. Rather, the parties agreed that, in the event [AEFC] was the prevailing party, the issue of attorney's fees would be submitted to the Court for determination and, if appropriate, inclusion in the Judgment.

6

Thereafter, the court entered an amended judgment awarding AEFC total compensatory damages of $460,065.93, plus post-judgment interest.[2] This appeal followed.

Vietti's first point challenges the trial court's award of attorney fees to AEFC. "Whether a trial court has authority to award attorney's fees is a question of law, which we review *de novo*." **Desu v. Lewis**, 427 S.W.3d 843, 844 (Mo. App. 2014); *see also* **Lucas Stucco & EIFS Design, LLC v. Landau**, 324 S.W.3d 444, 445 (Mo. banc 2010). Vietti contends the trial court lacked the authority to award AEFC attorney fees because it only prevailed on its common law fraud theory of recovery. We agree.

At this point, it is important to note that the trial court inaccurately summarized the parties' agreement. The statement that the parties agreed to submit the issue of attorney fees after trial if AEFC was the "prevailing party" is overbroad. AEFC's clearly stated position in its motion in limine and at trial was that the judge could decide the issue of attorney fees post-trial if AEFC was entitled to them on a contractual theory. Vietti's attorneys agreed with that procedure. The record does not support the statement that Vietti had agreed AEFC was entitled to attorney fees if it prevailed on any pleaded theory.

The only submitted theory upon which the jury found for AEFC was common law fraud. Missouri generally does not permit recovery of attorney fees in damage actions. *See* **Morris Branson Theatre, LLC v. Cindy Lee, LLC**, 472 S.W.3d 635, 642 (Mo. App. 2015). "Missouri follows the 'American Rule' regarding attorney's fees, which provides that, absent statutory authorization or contractual agreement, each party bears the expense

---

[2] That figure was comprised of the jury's actual damage award of $106,626.61, attorney fees of $350,708, and costs of $2,731.32.

7

of his or her own attorney's fees." ***Tupper v. City of St. Louis***, 468 S.W.3d 360, 374 (Mo. banc 2015).[3] Here, AEFC was awarded actual damages only on its common law fraud theory. Based on the American Rule, a trial court lacks the authority to award attorney fees to a party who prevails on a common law theory of recovery, such as negligence or fraud. *See, e.g.*, ***Green v. Plaza in Clayton Condo. Ass'n***, 410 S.W.3d 272, 281-82 (Mo. App. 2013) (affirming the denial of attorney fees to plaintiffs, who recovered money damages on their common law negligence theory); ***Borgschulte v. Bonnot***, 285 S.W.3d 345, 352 (Mo. App. 2009) (reversing an award of attorney fees to plaintiffs, who were awarded money damages on their fraudulent misrepresentation theory of recovery, rather than their breach of contract theory); ***Memco, Inc. v. Chronister***, 27 S.W.3d 871, 877-78 (Mo. App. 2000) (reversing an award of attorney fees to plaintiffs, who recovered on their common law fraud theory); ***Hoffman v. Quality Chrysler Plymouth Sales, Inc.***, 706 S.W.2d 576, 582 (Mo. App. 1986) (remanding the case with instructions to vacate an attorney fee award to plaintiffs, who recovered on their common law fraud theory, if defendants' motion to set aside the judgment was denied); ***Gollwitzer v. Theodoro***, 675 S.W.2d 109, 111 (Mo. App. 1984) (plaintiffs who elected to submit a common law fraud theory to support a request for punitive damages could not be awarded attorney fees).

---

[3] Two other exceptions have been recognized. The first is that "attorney's fees may, on rare occasions, be recovered when a court of equity finds it necessary to balance benefits where very unusual circumstances have been shown." ***Cupit v. Dry Basement, Inc.***, 592 S.W.3d 417, 422 (Mo. App. 2020). The second is that attorney fees may be awarded when "the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation." ***Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC***, 585 S.W.3d 269, 285 (Mo. banc 2019) (citation omitted). Neither exception applies to this case.

Thus, under well settled Missouri law, the trial court here lacked the authority to award attorney fees to AEFC.

AEFC argues that it was entitled to contractual attorney fees because there were provisions for attorney fees in the Franchise Agreement and its attached Personal Guarantee. We find no merit in that argument for the following reasons.

First, by the express terms of the Settlement Agreement, the Franchise Agreement and its attached Personal Guarantee were terminated on May 30, 2013 and no longer had any force or effect. An award of attorney fees cannot be made in reliance on a contract that no longer exists. *Greenstreet v. Fairchild*, 313 S.W.3d 163, 172 n.4 (Mo. App. 2010); *Harris v. Desisto*, 932 S.W.2d 435, 448 (Mo. App. 1996). The only way AEFC could have relied upon the provisions for attorney fees in the Franchise Agreement and Personal Guarantee was to have the trial court rescind the Settlement Agreement. *See Anglin Family Investments v. Hobbs*, 375 S.W.3d 244, 252 (Mo. App. 2012) ("[r]escission of a contract extinguishes it and restores the parties to the positions they occupied before the contract was executed"). In Count 1 of the third amended petition, rescission of the Settlement Agreement was one of the remedies sought by AEFC. By the time of trial, however, AEFC had abandoned that requested remedy. Instead, AEFC chose to submit common law fraud as its favored theory of recovery in Verdict Form A. The only breach of contract theory of recovery, submitted to the jury in Verdict Form B, was based on the Settlement Agreement. This alternative submission would have permitted AEFC to potentially recover $10,000 in liquidated damages if the jury returned a verdict for Vietti on the common law fraud theory. The jury also was told not to reach this theory if it found for AEFC in Verdict Form A. By electing to submit the case that way, AEFC was bound

9

by the restrictions placed on each chosen theory. ***Gollwitzer***, 675 S.W.2d at 111. Because the jury only returned a verdict for AEFC on its common law fraud theory of recovery, the trial court did not have the authority to award attorney fees to AEFC. *See* ***id***.

Second, assuming *arguendo* that the provisions for attorney fees in the Franchise Agreement and Personal Guarantee were still enforceable, AEFC could not recover such fees unless it submitted and prevailed upon breach of contract theories of recovery involving those contracts. That did not happen. Instead, AEFC abandoned its breach of contract theories involving the Franchise Agreement and the Personal Guarantee at trial, and neither of those theories of recovery was submitted to the jury.

An illustrative example of how this principle is applied can be found in ***Borgschulte v. Bonnot***, 285 S.W.3d 345 (Mo. App. 2009). There, plaintiffs were purchasers of real estate near the Table Rock Lake area. ***Id***. at 347. After the purchasers received the sellers' disclosure statement and all parties signed the sales contract, the purchasers discovered that the property had issues with sewage seeping through the yard. ***Id***. at 347-48. There was evidence that the sellers knew about the septic-system issues prior to the sale, but they failed to disclose the problem to the purchasers. ***Id***. at 348-49. Thereafter, the purchasers filed a three-count petition alleging: (1) fraudulent misrepresentation; (2) breach of contract; and (3) negligent misrepresentation. ***Id***. at 347 n.1. Following trial, the court entered judgment and awarded damages in favor of the purchasers based on their theory of recovery for fraudulent misrepresentation. ***Id***. The trial court also awarded purchasers attorney fees, as provided by the sales contract. ***Id***. at 347. On sellers' appeal, this Court affirmed the damage award on the fraudulent misrepresentation theory. The award for attorney fees, however, was reversed because:

Although the sales contract provided for attorney fees for a prevailing party upon default on the contract, that was not the basis on which plaintiffs prevailed. Plaintiffs prevailed on their tort action for fraudulent misrepresentation, not on their contract action.

*Id*. at 352. We apply that principle here. Because AEFC only prevailed on its tort theory of common law fraud, it was not entitled to recover attorney fees.

Vietti's first point is granted. The trial court's award of $350,708 to AEFC for attorney fees is reversed. In all other respects, the judgment is affirmed. The cause is remanded with directions to the trial court to enter an amended judgment consistent with this opinion.

JEFFREY W. BATES, C.J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR